Rockingham,
No. 4291.

LEAVITT E. MOULTON & a. v. WILLIAM H. BEALS & a.

Argued January 5, 1954.

Decided January 29, 1954.

462

*Charles F. Hartnett* (by brief and orally), for the plaintiffs.

*Burns, Calderwood & Bryant* (*Mr. Bryant* orally), for the defendants.

PER CURIAM. R. L., c. 57, s. 3, as amended, provides that selectmen "shall warn" a special meeting upon application of a specified number of voters, and section 8 provides that a Justice of the Superior Court upon application of the voters, may issue a warrant for such meeting "if the selectmen unreasonably neglect or refuse to warn." By the decree and order providing for the special meeting, the Presiding Justice impliedly found that the refusal of the selectmen to call the meeting was unreasonable. The defendants' exceptions to the decree and order raise the question of whether the Court was warranted in so finding. In support of their exceptions the defendants urge that the town is without authority to act upon the matters stated in the warrant, or to commit them to any representative of the town other than the selectmen.

R. L., c. 59, s. 11, provides that selectmen "shall manage the prudential affairs of the town and perform the duties by law prescribed," and s. 50 provides that "if any town fails to choose agents . . . the selectmen shall discharge the duties and have the powers of such offices until the same are filled . . . as provided by law." Numerous statutory provisions charge selectmen with specific duties, but none of them deals expressly with the manage-

ment of actions against the town, or the employment of counsel, other than legislative counsel (R. L., *c.* 51, *s.* 9).

The nature of the duties encompassed in management of "the prudential affairs of the town" has been considered in a number of the earlier cases (see *Pike* v. *Middleton,* 12 N. H. 278, 282; *Sanborn* v. *Deerfield,* 2 N. H. 251, 253; *Carlton* v. *Bath,* 22 N. H. 559; *Andover* v. *Grafton,* 7 N. H. 298), but as was pointed out in *Sumner* v. *Dalton,* 58 N. H. 295, 297: "The particular duties comprehended within the meaning of the phrase 'prudential affairs' are not easily enumerated." In *Rich* v. *Errol,* 51 N. H. 350, 354, it was said: "Under these statutes, selectmen have not been regarded as the general agents of the town, 'clothed with the general powers of the corporate body for which they act. They can only exercise such powers and perform such duties as are properly incident to the special and limited authority conferred on them by their office.' They are 'empowered to do only such acts as are required to meet the exigencies of *ordinary* town business.'" (Emphasis supplied). See *Smith* v. *Inhabitants of Cheshire,* 13 Gray (Mass.) 318. It has been settled that as an incident of their special authority selectmen may "bring all suits . . . which the proper and faithful discharge of their duties requires." *Albany* v. *Abbott,* 61 N. H. 157, 159.

In the performance of certain of their statutory duties, "where the duties are imposed specifically· by statute on the officer, and the town has no duty to perform, no right to defend, and no direct interest to protect," as when selectmen act in a judicial capacity, they act as State officers and "not as the agents or servants of the town." *Merrill* v. *Plainfield,* 45 N. H. 126, 134; *cf. Felch* v. *Weare,* 69 N. H. 617; *Spinney* v. *Seabrook,* 79 N. H. 34, 36; *Shea* v. *Portsmouth,* 98 N. H. 22. It is reasonably plain however that the duties of selectmen with respect to the prudential affairs of the town relate to matters in which the town has a direct interest and concerning which it has the authority and right of control. In such matters, as previously noted, selectmen are not "general agents of the town," and their duties relate to the ordinary business of the town. *Rich* v. *Errol, supra.*

The proceedings pending in the United States District Court for the condemnation of rights and interests of the town, are not the "ordinary business" of the town, with the management of which the selectmen are primarily charged. Doubtless in the absence of special action by the town, the selectmen would be under a duty

to protect the interest of the town (see R. L., c. 59, s. 50, *supra*) and in the event of doubt to seek its instructions by calling a special meeting. See *Albany* v. *Abbott, supra*; *Rich* v. *Errol, supra*, 355, 356. But the town was free to place the management of the litigation in the hands of a special committee, or the selectmen, as it might see fit, with such instructions as it might choose to give with respect to counsel or otherwise. *Kinsley* v. *Norris*, 60 N. H. 131; s.c., 62 N. H. 652; *Lisbon* v. *Holton*, 51 N. H. 209; *Bachelder* v. *Epping*, 28 N. H. 354, 359. See also, *Davis* v. *School District*, 43 N. H. 381; *Adams* v. *Plunkett*, 274 Mass. 453, 462, and cases cited. "In New England town meetings the voters are the sovereigns, and their will, when duly expressed, is supreme." *Attorney-General* v. *Folsom*, 69 N. H. 556, 557. In the early case of *Union* v. *Crawford*, 19 Conn. 331, 337, it was said that while "select-men, under the general authority given them . . . have a right to appear as such in suits in which the town is a party . . . towns have the right, at their pleasure, to appoint agents or attorneys to take the immediate charge of their legal proceedings." See Town Officer (1886), 102.

We find no statutory provision which precludes this conclusion, and as the statute placing the selectmen in charge of the prudential affairs of the town is interpreted, we do not consider that it vests them with exclusive authority to conduct litigation to which the town is a party. Under these circumstances, and in view of the uncertainties with respect to the special meeting of September 8, 1953, raised by the action brought by the defendants, there was no error in the finding that the selectmen unreasonably refused to warn a second special meeting upon the application made to them.

The argument has been made that it was erroneous for the Court to allow a special town meeting before it decided whether the action of the previous town meeting was valid. We see no error in this procedure. If the prior meeting was illegal, a new one was necessary to correct the errors therein. If it was legal, the new meeting has the authority to reaffirm the previous action or take different action if the voters so desire. Accordingly the order is

*Exceptions overruled.*

BLANDIN, J., *dissenting*: It is settled here beyond question that towns as mere subdivisions of the State have only such powers as are given them by the Legislature. *Leavitt* v. *North Hampton,* 98 N. H. 193, 197, and cases cited. Among such powers are those of suing, being sued, and prosecuting and defending suits "in any court or elsewhere." R. L., c. 51, s. 1. Towns are also directed to choose selectmen who "shall manage the prudential affairs of the town and perform the duties by law prescribed." R. L., c. 59, s. 11. That these statutes authorize selectmen to institute or defend law suits involving the hiring of lawyers is "too clear to be disputed." *Albany* v. *Abbott,* 61 N. H. 157, 159; *New London* v. *Davis,* 73 N. H. 72, 79, 80. Indeed, it would be difficult to find any action which seems to fall within the meaning of "prudential affairs" more clearly than that of defending or prosecuting cases. The mere fact that the federal government is a party cannot alter this. This being the selectmen's duty prescribed by statute, the voters cannot delegate it to others (*Attorney-General* v. *Lowell,* 67 N. H. 198, 199), nor can they in the absence of fraud or other illegal conduct override the discretion of the selectmen when acting within their powers. See *Berlin &c. Ass'n* v. *Mayor &c. of Berlin,* 87 N. H. 80; *Clough* v. *Verrette,* 79 N. H. 356, 359. While carrying on within the scope of their statutory authority, the selectmen are "independent public officers whose duties are prescribed by law, and not by the municipality which elects them." *Felch* v. *Weare,* 69 N. H. 617, 618. Interference with such duties is in effect "void as an attempt to repeal an act of the legislature." *School District* v. *Currier,* 45 N. H. 573.

There is nothing in our statutes expressed or reasonably to be implied which limits their authority in such situations as this, and as fortifying this conclusion, it is significant that wherever the Legislature saw fit to so limit the authority of the selectmen and to place the conduct of certain matters in the hands of the voters a special statute was passed as in the case of suits involving the abandonment of railroads (R. L., c. 51, s. 4 XXVI), and in the employment of legislative counsel. *Id.,* c. 51, s. 9, *supra.* It is not to be presumed that the lawmakers intended to vest joint control in the selectmen and voters in such affairs as concern us here. The chaotic conditions which would result and of which the present case is an example seem too plain to require delineation. R. L., c. 3, s. 4, cited by the plaintiffs which requires the consent of a majority of the voters of a town to a certain class of taking

by the federal government is no authority for their position. This chapter is limited to the acquisition by the government of lands which "by reason of . . . location, or condition are better adapted to public conservation, forestry, recreation, experimental, and demonstration purposes than for continued private ownership and development." *S*. 6, *supra*. Furthermore, under this chapter the right of the federal government to take lands by condemnation is denied as against an unwilling owner, which could not be the case as here where the taking is for the purpose of national defense. It is also significant that by R. L., *c*. 1, *s*. 3, which is expressly not repealed by *c*. 3 the selectmen are given the right to assess damages on the taking of land by the government for "public uses" (*c*. 1, *s*. 3), which further tends to indicate that the intent of the Legislature was to vest the selectmen with authority here.

Finally, there are sound historical and practical reasons supporting the conclusion that the statutory intent is that the discretion of the selectmen reasonably exercised in such situations as this should not be interfered with. Ours is a republican or representative type of government. True, the voters are supreme but only within the fabric which they themselves have adopted. Here the selectmen were freely chosen by the voters to carry on the business of the town. These officers as well as their constituents are bound by the limits upon their powers which the Legislature, itself the chosen representatives of the electorate, has set. The principle of selecting officers and upholding their discretionary action when within the purview of their authority and when neither fraudulent nor unreasonable, is firmly established in our system of government and conducive to the efficient and intelligent dispatch of public business. Indeed, the practical objections to a system which would seek to persuade competent persons to accept a burdensome town office, only to be exposed to the constant harassment of having their decisions overturned at any time, are such that it seems highly unlikely that this was intended. The people always have the remedy of turning out of office those whose conduct displeases them, but meanwhile, they have chosen these defendants to manage the prudential affairs of the town, obligated only to act in good faith and reasonably and within the limits of their statutory authority. There is no suggestion here that the selectmen have acted in bad faith or beyond the bounds of reason, and in these circumstances the voters cannot override them.

I would sustain the exceptions.