Hillsborough,
No. 5054.

JOHN PRESTON & a.

*v.*

DONALD C. GILLAM & a.

Argued September 5, 1962.

Decided September 28, 1962.

*Kenneth A. Brighton* and *Richard R. Fernald* (*Mr. Fernald* orally), for the plaintiffs.

*Charles J. Lincoln* (by brief and orally), for the defendants.

LAMPRON, J.   The land involved, known as the Batson land, was acquired by the town of New Ipswich by a tax collector's deed on December 31, 1956.   At a town meeting held on March 14, 1961 the following article in the warrant was adopted: "To see if the Town will vote to authorize the Selectmen to administer or dispose of any real estate acquired by the Town through Tax Collector's deeds."   This vote gave the selectmen full power and authority to sell and convey the Batson land for and on behalf of the town of New Ipswich.   *Moulton* v. *Beals*, 98 N. H. 461; *de Rochemont* v. *Holden*, 99 N. H. 80.

On April 10, 1961, the selectmen notified the school board that the town owned this land and inquired if the school board had any use for it.   On May 8, Donald C. Gillam, as chairman of the board of selectmen informed the school board that the Batson land could be sold at any time by the town and suggested that a land study committee be appointed by that board to investigate the possible use of this land for school purposes.   At a school board meeting on that date names of citizens to serve on this committee were proposed.

On October 16, 1961 the board of selectmen by a vote of 2 to 1, Donald C. Gillam voting against, decided to sell the Batson land along with certain other land at public auction on November 4,

1961. On October 19, Gillam informed the school board by letter of the vote and date of sale.

No report from the study committee or decision by the school board as to whether the Batson land was to be retained for school purposes had been received by the selectmen when this land was sold on November 4, 1961 for $2,500 to Thurston Williams of Wilton, the highest bidder.

However on November 1, 1961 a petition under RSA 39:3 signed by eighty-seven voters of the town was presented to the board of selectmen requesting it to call a special town meeting "to see if the Town will vote to retain possession of the so-called Batson land . . . or take any other action thereon." The selectmen denied this petition on November 4 prior to the auction sale. Later on November 13, 1961, the school board voted unanimously "to take whatever steps are necessary to acquire and hold the Batson land for future school purposes."

RSA 39:3 provides that "upon the written application of fifty or more voters or one-fourth of the voters in town, so presented not less than sixty days before the next annual meeting, the selectmen shall warn a special meeting to act upon any question specified in such application." The petition having been received on November 1, it was impossible for the selectmen to call a special meeting before November 4, the date set for the sale, as there was insufficient time to comply with the requirements of notice provided by RSA 39:4, 5.

We are of the opinion that under the circumstances of this case the selectmen were not compelled to postpone the sale and to call a special meeting to deal with the question of whether the Batson land should be retained by the town for school purposes.

Section 3 provides that a petition for a special meeting should be presented not less than sixty days before the next annual meeting. This indicates in our judgment a legislative intent that such a petition should not be filed or entertained when it will interfere with the orderly transaction of town affairs. Consequently the Legislature did not intend that the petition filed in this case would compel the selectmen to postpone a sale which they had duly scheduled in the orderly management of such affairs. The authority previously confered upon the selectmen "to administer or dispose of" the real estate continued in force until rescinded. While it was sufficiently broad to permit the selectmen, in their discretion, to discontinue the sale pending reconsideration by

the voters, their decision to proceed in the absence of any report from the school board was not an abuse of discretion. The mere filing of the petition for a special meeting did not prevent them from exercising the authority to sell which the voters had conferred upon them in March.

Furthermore section 9 of said chapter 39 provides that a justice of the Superior Court upon application of certain voters may issue a warrant for such a meeting "if the selectmen unreasonably neglect or refuse to warn a meeting." This indicates that a certain exercise of judgment by the board of selectmen was intended and we cannot say that under the circumstances previously detailed in this opinion their refusal to call a meeting could be deemed unreasonable. See *Moulton* v. *Beals*, 98 N. H. 461; *Walsworth* v. *Casassa*, 219 Mass. 200, 207. In brief, to construe this statute as the plaintiffs urge would be to enable a minority of voters to block all action by the town by repeated petitions. It is not to be presumed that the Legislature intended such a result. See *Peterborough Savings Bank* v. *King*, 103 N. H. 206, 209.

The plaintiffs contend that selectman Parhiala's personal interest in acquiring the Batson land disqualified him to act as a selectman in any decision concerning this land, thus rendering the selectmen's vote to sell it illegal and void.

It is a general rule of law, and the law in New Hampshire, that "there is a conflict of interest when a public officer votes on a matter in which he has a direct personal and pecuniary interest." *Opinion of the Justices*, 104 N. H. 261, 264; *Rider* v. *Portsmouth*, 67 N. H. 298, 299; *Rollins* v. *Connor*, 74 N. H. 456. However in all matters where his interest was the same as that of any other citizen his right to vote cannot be questioned. *Rider* v. *Portsmouth, supra*, 299. The decision as to whether a conflict of interest exists is ordinarily factual and depends upon the circumstances of the particular case. *Opinion of the Justices*, 75 N. H. 613, 621; *Griggs* v. *Princeton Borough*, 33 N. J. 207.

The evidence on this issue was the following. Parhiala would not agree "to sell any land until we could take care of all of it. He said that he would not sell the three other parcels until we had settled the matter of all the land, and would have one sale in the year and not more than one." There was also evidence that he was one of either three or four bidders and that he bid on the Batson land twice.

The fact that selectman Parhiala was in favor of selling all

of the disposable land of the town in one sale and that he bid on the property does not indicate that his motives were other than the welfare of the town of New Ipswich. We are therefore of the opinion that this evidence considered most favorably to the plaintiffs cannot be found to prove such a direct personal and pecuniary interest on the part of this selectman in the Batson land, sold at public auction to one Williams, as would vitiate his vote to sell this land or the sale thereof.

*Petition dismissed.*

All concurred.