Cheshire
No. 7979

WINCHESTER TAXPAYERS' ASSOCIATION

v.

BOARD OF SELECTMEN,
TOWN OF WINCHESTER

March 10, 1978

*R. J. Shortlidge, Jr.,* of Keene, for the plaintiff.

*William H. Watson,* of Keene, for the defendants.

GRIMES, J. This is an appeal from the denial of a petition filed in the superior court requesting that the court order the board of selectmen to "schedule forthwith and hold a special town meeting of the town of Winchester" pursuant to RSA 39:9. Following a trial, the Master (*Charles T. Gallagher,* Esq.) recommended that the petition be dismissed. The Court, *Loughlin,* J., approved this recommendation, and, pursuant to RSA 490:10, allowed and entered all questions of law raised by the pleadings and proceedings. The issues presented are whether the selectmen have any discretion under RSA 39:3 (Supp. 1975) to refuse to schedule a special town meeting and whether the court was correct in its ruling that the selectmen had not acted unreasonably by refusing to warn a meeting. RSA 39:9.

On March 2, 1976, the town of Winchester voted to appropriate $25,000 to hire an appraiser to reassess all taxable property. Pursuant to this vote, the selectmen entered into a contract with the James W. Sewall Company (hereinafter Sewall) to perform the reassessment. The plaintiffs generally complain about this reassessment.

On July 28, 1977, a petition under RSA 39:3 (Supp. 1975) signed by approximately two hundred voters of the town was presented to the board of selectmen requesting it to call a special town meeting to consider the following questions:

> 1. To see whether or not the Town will vote not to accept the re-evaluation of real estate within the Town being made by Sewall and Company.
>
> 2. To see whether or not the Town will vote to use the prior assessments for the current tax year, and until a new reassessment can be accomplished.
>
> 3. To see whether or not the Town will vote not to pay Sewall and Company any final payments still unpaid on the reassessment contract.

4. To see whether or not the Town will vote to seek repayment from Sewall and Company for monies already paid to them by the Town of Winchester, and/or to call the bond.

5. To see what other actions the Town will take to assure a fair and equitable reassessment of real estate within the Town for tax purposes.

The selectmen denied this petition, and on August 11, 1977, the plaintiffs filed with the superior court a petition pursuant to RSA 39:9.

RSA 39:3 (Supp. 1975) provides in relevant part as follows: "Upon the written application of fifty or more voters or one-fourth of the voters in town, so presented not less than sixty days before the next annual meeting, the selectmen shall warn a special meeting to act upon any question specified in such application." The petition was filed more than sixty days before the next annual meeting and was signed by more than the required number of voters. RSA 39:9 provides: "If the selectmen unreasonably neglect or refuse to warn a meeting, . . . a justice of the superior court, upon application in writing of twenty-five or more voters or of one-sixth part of the voters of such town, may issue a warrant for such meeting. . . ."

Defendants argue that they have some discretion whether or not to call a meeting under RSA 39:3 (Supp. 1975) and that this judgment cannot be overturned except for unreasonable neglect or refusal. RSA 39:9. Plaintiffs submit that RSA 39:3 (Supp. 1975) is by its terms mandatory in nature and point to our recent case of *Woodside v. Selectmen of Derry*, 116 N.H. 606, 366 A.2d 210 (1976) as support for their position. In *Woodside* we held that the selectmen had no discretion under RSA 39:3 (Supp. 1975) whether to insert an article in a warrant for the annual or biennial town meeting. We reached that conclusion because the legislature had clearly evidenced its intent by amending that portion of the statute and adding section 3-b. However, the amendments (Laws 1971, 79:1, and Laws 1975, 160:1) and the addition of section 3-b in 1971 did not alter that portion of RSA 39:3 (Supp. 1975) that deals with the selectmen's obligation to warn a special meeting. Therefore, our decisions in *Preston v. Gillam*, 104 N.H. 279, 184 A.2d 462 (1962), and *Moulton v. Beals*, 98 N.H. 461, 102 A.2d 489 (1954), continue to provide the principles which guide our inquiry.

In *Preston* we reasoned that there was no absolute requirement that the selectmen call a special meeting under RSA 39:3 where they could not have complied with the notice provisions of RSA 39:4 and 39:5, and we concluded by holding that the language in RSA 39:9 indicated that a certain exercise of judgment by the board of selectmen was intended. *Preston v. Gillam, supra* at 282, 184 A.2d at 464; *see Seabrook v. Perkins,* 112 N.H. 37, 39, 288 A.2d 688, 689 (1972). However, *Preston* clearly does not stand for the proposition that the selectmen have unbridled discretion to frustrate the voters' attempts to call a special town meeting. If a justice of the superior court finds that the selectmen unreasonably refused to warn a meeting he may issue a warrant for such a meeting. *Moulton v. Beals,* 98 N.H. at 462, 102 A.2d at 490; RSA 39:9.

Having determined that some discretion is allowed the selectmen, we must decide whether the master was correct in ruling that the selectmen had not acted unreasonably in the instant case. We are of the opinion he was not correct, for the reasons that follow.

The master correctly concluded that only if the proposed articles are proper subjects for a town meeting do the selectmen have any obligation to warn a special meeting. Clearly the selectmen would be under no obligation to warn a special meeting if the issue to be considered is prohibited or limited in scope by statute. For example, no special meeting need be called to consider a petition proposing a zoning amendment when the statute specifically limits the presentation of proposed zoning amendments to annual town meetings. RSA 31:63-b.

The master determined that proposed articles three and four were proper subjects for a town meeting and articles one, two, and five improper subjects. The master was incorrect in ruling that article five was an improper subject for a town meeting. Under RSA 74:1 and RSA 75:1 (Supp. 1975), the selectmen, not the town, are charged with the duty to appraise all taxable property. *Town of Hudson v. State Dep't of Rev. Ad.,* 118 N.H. 19, 381 A.2d 1202 (1978). The ruling as to articles one and two was therefore correct. However, article five was proposed to see what other actions the town would take to assure a fair and equitable reassessment of real estate. One of the actions available would be to have the town vote for assistance from the commissioner of revenue administration. RSA 71-A:23 (Supp. 1975). The town's vote to have the commissioner or his staff assist in the ap-

praisal would not modify the selectmen's duty to appraise all taxable property. The selectmen must consider the information tendered by the commissioner or his staff, but the duty to appraise all taxable property remains with selectmen. Article five therefore is a proper subject.

Plaintiffs' attempt to use RSA 71-B:17 (Supp. 1975) to save the remaining articles is unavailing. RSA 71-B:17 (Supp. 1975) provides in pertinent part: "When ordered to make an assessment or reassessment the selectmen or assessors shall make it within such time as the board [of taxation] orders. If a town meeting . . . prior to the expiration of the time prescribed in the order votes to have a complete appraisal or reappraisal made of all the taxable property, in the town or city, under terms and conditions satisfactory to the board, then the order of the board is suspended. . . ." RSA 71-B:17 does not give to the town an independent basis for requesting a reassessment; it merely states that if a town votes to have a reappraisal made then the order of the board of taxation is suspended.

The master found that proposed articles three and four seek to engage the town in litigation concerning Sewall's alleged failure to properly carry out the appraisal contract. We held in *Moulton v. Beals,* 98 N.H. at 464, 102 A.2d at 491, that the authority to conduct litigation does not rest exclusively with the selectmen, but may be controlled by the town. The proposed articles three and four, therefore, concern a proper subject for action by the town.

On a record which did not show any reasons of the selectmen for the denial, the master held that "[t]he petitioners must also demonstrate some practical necessity for holding a town meeting at this time to consider the Sewall contract or the refusal of the selectmen to warn the meeting will not be deemed unreasonable." This requirement does not correctly state what the plaintiffs must show. The plaintiffs must "demonstrate some practical necessity for holding a town meeting at this time" only when the absence of such necessity is one of the reasons, written or otherwise, that the selectmen gave for refusing to warn the special meeting. Implicit in RSA 39:9 is the requirement that the selectmen have legitimate reasons for denying the petition in the first instance. It is the selectmen's obligation therefore to state their reasons for

denying the petition so as to enable the superior court to determine whether the reasons given were reasonable. *Cf. N.H. Dep't of Rev. Ad. v. Public Employee Lab. Rel. Bd.*, 117 N.H. 976, 380 A.2d 1085 (1977) (requirement that agency develop a record for its decision to enable effective review).

 Even if the lack of practical necessity were a stated reason for the denial, the master improperly took into account current circumstances, including the imminence of the regularly scheduled town meeting, when he decided in November 1977 that the special meeting was not necessary. He should instead have determined whether a special meeting was warranted in light of circumstances existing at the time the plaintiffs filed their petition in July 1977. However, it is regrettable that it appears there is not now sufficient time to comply with the notice requirements of RSA 39:5 (Supp. 1975) to hold a special meeting before the annual town meeting.

*Remanded.*

LAMPRON, J., did not sit; the others concurred.