April 6,
  1909.

## Opinion of the Justices.

A person otherwise qualified for the office of railroad commissioner is not, as a matter of law, disqualified for appointment to that office or for the performance of its duties, because he is a special depositor in a guaranty savings bank which owns stock in a railroad corporation doing business in this state.

*To the Justices of the Supreme Court:*

A complaint having been filed with the governor and the honorable council on February 12, 1909, representing that Henry M. Putney, one of the railroad commissioners of this state, is disqualified by reason of interest in railroads doing business in this state, and it having been determined upon said complaint that the People's Savings Bank of Manchester, N. H., a guaranty savings bank incorporated under and by virtue of the laws of New Hampshire, at the date of filing said complaint and on the 20th day of February, 1909, was the owner of eighty shares of the capital stock of the Boston & Maine Railroad, one hundred shares of the capital stock of the Concord & Montreal Railroad, and bonds of the said Concord & Montreal Railroad of the value of ten thousand dollars; that both of said railroads are doing business in this state; that at the date of said Henry M. Putney's appointment as railroad commissioner, to wit, on the 16th day of October, 1907, the said People's Savings Bank was the owner of the greater part of said Boston & Maine Railroad stock and was also the owner of said Concord & Montreal Railroad bonds; that the said Henry M. Putney at the date of his said appointment was and ever since has been the treasurer of said bank and a stockholder therein; that after said 20th day of February, 1909, and after notice to said Henry M. Putney of said complaint, the said bank disposed of all of said railroad securities and no longer holds the same; and the governor and council, being in doubt, respectfully request the opinion of the justices of this honorable court upon the following questions, in order that they may correctly determine and exercise their duty in the premises:

1. Was said Henry M. Putney at the date of his said appointment as railroad commissioner eligible to the office, and was he then legally appointed?

2. Since the date of his said appointment has said Henry M.

Putney lawfully held the office of railroad commissioner thereunder, and is he now lawfully holding the same?

HENRY B. QUINBY,  *Governor.*

A. MELVIN FOSS,
HENRY W. BOUTWELL,
ALBERT ANNETT,          } *Councilors.*
JAMES G. FELLOWS,
LYFORD A. MERROW,

Concord, N. H., February 25, 1909.

*Burnham, Brown, Jones & Warren,* for Putney.

*Conrad W. Crooker* also filed a brief.

*To His Excellency the Governor, and the Honorable Council:*

In the absence of any suggestion of want of jurisdiction in the executive to appoint, or of the exercise of the power of removal vested in the governor and council, the only question of law apparently presented by both inquiries is the legal qualification of Mr. Putney, upon the facts submitted, to be appointed to, to enter upon, and to hold the office. While it is the duty of the justices of the supreme court, when requested by the governor and council, to submit their opinions "upon important questions of law and upon solemn occasions" (Const., *art.* 73 [74]), it has always been deemed essential that it should appear to the justices that their answer to any question so presented would be of assistance to the governor and council in the performance of their executive duties. *Opinion of the Justices,* 73 N. H. 621. A preliminary question of this character necessarily arises. As the alleged disqualification does not now exist, we are therefore first to inquire whether it is material to the determination of what appears to be a petition for the removal of Mr. Putney from the office of railroad commissioner, now pending before the governor and council, for them to be informed whether the facts stated disqualify him from entering upon or being appointed to the office. It is argued that, whether he was eligible to the office or not, he was formally appointed thereto, accepted the office, and is in occupation of it, and that his title thereto cannot be determined except in a proceeding before the courts, and that therefore it is our duty to decline to answer. But while the argument is not without technical merit in view of the peculiar phraseology of the questions, we are inclined to the belief that under the circumstances disclosed the questions should be given a somewhat broader scope, so that our

response may not be entirely useless. It is true that if we should be of the opinion that Mr. Putney is not at the present time a *de jure* officer, he would still be a *de facto* officer in occupation of the office. It could not be determined that the office was vacant, or that he had no title thereto, except upon some proceedings in the nature of a *quo warranto* to test his official title. But upon the question now pending before the governor and council, it may be important, as an evidentiary fact bearing upon the question of the public good, to ascertain whether upon the facts presented it appears as a conclusion of law that he is not a *de jure* officer. We cannot say that our advice upon that question would not be material, or that it might not assist the governor and council in the discharge of their official duty. His want of legal title to the office might be a circumstance of some weight, in their opinion, in deciding whether the public good required his removal.

The fundamental inquiry, as we understand it, is whether one otherwise qualified for the office of railroad commissioner is, as a conclusive presumption of law, disqualified for appointment to the office, or for the performance of its duties, by the fact that he is a special depositor in a guaranty savings bank, which is the owner of stock in a railroad corporation doing business in this state. By section 1, chapter 155, Public Statutes, it is provided that "no person who owns railroad stock, or who is employed by a railroad corporation, or who is otherwise interested in one, shall be eligible to the office" of railroad commissioner. Mr. Putney at the time of his appointment was not the owner of railroad stock, nor was he an employee of a railroad. Do the facts show that he was "otherwise interested in one," so that his formal appointment was void as a matter of law? The answer to this question depends upon the finding of the fact of legislative intention, which is a judicial function.

It is clear that this statutory language cannot be given its broadest or most literal significance. In a sense, all people are interested in railroads. No one is entirely indifferent upon the subject of their development and the public facilities for transportation which they afford. But general interest of this character could not have been meant to be a disqualification, and probably no one would claim that it was. The evident purpose of the legislature was to provide for the appointment of men who should have no bias in favor of railroads; and to more effectually accomplish this purpose, it was deemed best to exclude from the office of railroad commissioner men whose business relations with railroads were such as would probably prevent their being impartial in the performance of the duties of that office. One "who owns railroad stock, or who is employed by a railroad corporation," is specially

excluded, for the obvious reason that he would probably be inclined to favor the railroad. But it was believed there might be others whose peculiar business relations with railroads would furnish evidence of their partiality. Hence one who " is otherwise interested in " a railroad is made ineligible; that is, one who occupying some other though analogous position to a railroad is so far interested in consequence of his connection with a railroad that he is presumably biased thereby. If his actual pecuniary interest is so indirect, contingent, or problematical that men of ordinary capacity and intelligence would not be influenced by it, it is not probable that the legislature intended to disqualify him for appointment to the office of railroad commissioner, under this indefinite statutory expression. Suppose a candidate has a deposit of a few dollars in a savings bank which happens to own a single share of railroad stock: by some refinement of reasoning it might be said that he was interested in the railroad, though in most instances of that character it would be certain he had no knowledge of the bank's investment; and it would follow logically, by a literal interpretation of the statute, that nearly all of the very numerous depositors in savings banks are debarred as a pure matter of law from holding the office of railroad commissioner, because there are few if any savings banks who are not holders of railroad securities. Upon this theory, it would be immaterial to inquire whether a particular depositor had knowledge that the bank held such securities, or whether his deposit was large or small, or whether the investment was considerable or insignificant. The deposit, however small, in connection with an investment, however insignificant, would show conclusively that the depositor was ineligible. In the absence of express legislative language clearly showing such a purpose, it would be unreasonable to read it into the statute inferentially or by construction. If the legislature had supposed they were disqualifying thousands of resident depositors from holding the office of commissioner, it is hardly conceivable that they would have sought to conceal their purpose by the use of the indefinite phrase " or otherwise interested in one." In construing statutes whose meaning is doubtful or is to be ascertained by inference, the absurdity or apparent inequity resulting from a literal or merely verbal construction is evidence in support of another construction, based upon broader views of public policy, which is not attended with results of that character.

Since it seems to be reasonably certain that the statute was not intended to apply to all savings bank depositors any part of whose deposits may be invested in railroad stock, and since, on the other hand, it seems equally clear that it was intended to apply to some depositors whose deposits were very large in a bank having

a large part of its funds invested in railroad securities, no rule of law can be announced which will absolutely determine the question of one's disqualifying interest in every case. When the candidate is an owner of railroad stock, or when he is employed by a railroad corporation, it follows as a matter of law that he is disqualified, because it is so declared in the statute; but when, for instance, he is a depositor in a bank holding railroad stock, the question whether he is " otherwise interested " must first be determined as a question of fact, if the statute is to be given a reasonable construction. The attempt to determine that question as a question of law leads to absurd and unexpected results, while its solution as a question of fact in each instance by the appointing power affords a reasonable and practical means of securing unbiased and impartial appointees. A large pecuniary interest in railroad stock, although indirect, may afford convincing evidence of bias, while a slight interest of that character, though competent, might not be sufficient to prove the fact.

Further evidence of the legislative intention may be afforded by a consideration of the law and practice relating to the competency of jurors. " It is essential to the preservation of the rights of every individual, his life, liberty, property, and character, that there be an impartial interpretation of the laws and administration of justice. It is the right of every citizen to be tried by judges as impartial as the lot of humanity will admit." Bill of Rights, *art.* 35. "The guaranty applies to jurors as well as judges " (*State* v. *Sawtelle*, 66 N. H. 488, 503), and it has been scrupulously guarded by the courts. In view of this constitutional guaranty and the extreme care on the part of the judiciary to secure impartial jurors, it is at least probable that the legislature did not intend to provide a stricter qualification for an appointee as railroad commissioner than for a juror. It did not intend to render one ineligible to the office as a matter of law, because he happened to have some indirect and remote pecuniary or business interest in a railroad corporation, when a similar interest on the part of a juror in a suit in which the railroad was a party might or might not render him incompetent to sit as a matter of fact. If in the case of the man drawn as a juror it would be the duty of the court to pass upon the question of bias as a fact, and to admit or reject him upon a finding that he was or was not indifferent, the qualification or competency of a candidate for railroad commissioner, upon the same evidence, would seem to be determinable as a question of fact, and not by the application of an unbending formula called a rule of law. In both cases, the object to be sought is honesty and impartiality in the discharge of public duties; and in the absence of unequivocal legislative requirement to the contrary, it is confusing and unsatis-

factory to say that in one case the question is one of law and in the other one of fact. There is no evidence that the legislature entertained such views.

Section 25, chapter 209, Public Statutes, is as follows: "Any juror may be required by the court, on motion of a party in the cause to be tried, to answer upon oath whether he expects to gain or lose by the issue of the cause; whether he is related to either party; whether he has advised or assisted either party, or directly or indirectly given his opinion or has formed an opinion; whether he is sensible of any prejudice in the cause; or whether any one of the counsel in the cause is employed by him in any action then pending in said court. If it appears that any juror is not indifferent, he shall be set aside on that trial." The question whether a juror is disqualified to sit in a cause on account of his interest therein, under the statute, is one of fact for the court. If he is interested, it does not follow as a conclusion of law that he is not indifferent. He may nevertheless be found to be unbiased and impartial. "The statute does not declare that upon proof of one or of all the causes mentioned a juror shall be deemed disqualified. On the contrary, it assumes that a juror may have a minute and remote interest—as, for example, in fines payable to the state or the county; may expect to gain or lose by the issue of the cause, as if his expectation is groundless; may be remotely related to one of the parties; or may have formed or expressed an opinion—and nevertheless be found indifferent." *State* v. *Sawtelle*, 66 N. H. 488, 529. "Whether the jurors were indifferent was a question of fact to be determined at the trial term." *State* v. *Perkins*, 70 N. H. 330; *Rowell* v. *Railroad*, 58 N. H. 514; *Temple* v. *Sumner*, Smith N. H. 226. "The question whether Tenney was 'indifferent' was one of fact to be decided by the court at the trial; . . . the court are 'the triers' of this question; and their decision stands like the verdict of a jury, to be reversed only when it is manifestly against law and evidence." *State* v. *Pike*, 49 N. H. 399, 406, 407.

But as in the earlier cases there are suggestions, if not direct holdings, that any pecuniary interest is necessarily a disqualification for one to act as a juror, it may be useful to refer to some of them and to briefly consider their significance as authorities. In *Petition of Nashua*, 12 N. H. 425, it was held that a road commissioner is disqualified to sit upon a petition for the discontinuance of a road in a town of which he was a citizen, The decision was put upon the ground that the same test of his qualification must be applied to him as to a juror; and as he would either "gain or lose" by the result of the proceeding, he was disqualified. If it was meant to announce that conclusion as a necessary inference of

law, it is unsound. As clearly pointed out in *State* v. *Sawtelle, supra*, the liability to gain or lose is evidence of bias and partiality in a juror, but it is not necessarily conclusive against his eligibility. Another instance of announcing the incompetency of jurors, as a proposition of law, because they had expressed opinions hostile to the respondent, is furnished by the case of *State* v. *Webster*, 13 N. H. 491, which Mr. Justice *Carpenter* says, in *State* v. *Sawtelle, supra*, 526, " received little consideration."

In *Page* v. *Railroad*, 21 N. H. 438, in a very brief opinion it is apparently held " that any, even the smallest, degree of interest in the question pending is a decisive objection to a juror." Three cases are cited to this proposition, viz : *Hesketh* v. *Braddock*, 3 Burr. 1856 ; *Hawkes* v. *Kennebeck*, 7 Mass. 464 ; *Wood* v. *Stoddard*, 2 Johns. 194. Whether that is an accurate statement of the ancient common law, or whether it was made without a due appreciation of the distinction between principal challenges and challenges for favor, it is unnecessary to inquire ; for it does not purport to be the result of a judicial construction of the statute then in force (Laws, *ed.* 1830, *p.* 467) which, as construed in *State* v. *Sawtelle*, in effect rendered the interest of a juror evidence only upon the question whether he was in fact indifferent. To say as a necessary conclusion of law that he was, following and adopting the terse language of Lord *Mansfield* in *Hesketh* v. *Braddock, supra*, is apparently to overlook the statute upon the subject, which was not cited or referred to in the opinion in *Page* v. *Railroad*.

In *Mitchell* v. *Holderness*, 29 N. H. 523, 529, the principle that " any, even the smallest, degree of interest " will disqualify a juror did not prevent a road commissioner from acting upon a petition for a highway ; and it was said " that it is a direct interest, and not a remote or supposed advantage, that shall exclude a commissioner from acting." Whether it was intended to hold that it was not competent to find that an indirect interest, however great, was a disqualifying interest, or that the least direct pecuniary interest could not be held to be harmless, is not clear. The opinion shows, however, that Lord *Mansfield's* language is subject to qualification and cannot be taken as an unbending rule of law. The question of bias is so much a question of fact that it is difficult to frame a legal proposition on the subject covering all imaginable cases, in the absence of clear and specific statutory prohibition. And it is evidently this difficulty that accounts, in part at least, for much of the unsatisfactory language found in some of the cases.

In *Petition of New Boston*, 49 N. H. 328, the county commissioners laid out a highway in one town and ordered a portion of the expense of constructing it to be paid by an adjoining town ;

and it was held that a stockholder of a corporation which was located and doing business in the latter town, and which would be benefited by the road, was disqualified to act as a commissioner, because he was interested and "must either 'gain or lose' by the event of the proceeding before him." And the court remark: "There can be no discrimination as to the extent or amount of interest, nor whether the cause may have been decided upon considerations independent of it." This was evidently announced as a conclusion of law, but without discussion, and was induced by statements contained in earlier cases which were cited, viz: *Petition of Nashua, supra; Mitchell* v. *Holderness, supra; Moses* v. *Julian*, 45 N. H. 52. In the case last referred to, it was held that a judge of probate who wrote a will is disqualified to sit upon the probate of it, on the obvious ground that the constitution expressly prohibits judges generally (*art.* 78 [79] ), and judges of probate specially (*art.* 80 [81] ), to act as counsel in matters that may come before them. The opinion is valuable as indicating many of the grounds which have been held sufficient to recuse judicial officers, but no attempt was made to point out those which were deemed conclusive in law and those which merely furnished evidence of disqualification. It gives little direct support to the point decided in *Petition of New Boston*. See, also, *Stearns* v. *Wright*, 51 N. H. 600; *Bedell* v. *Bailey*, 58 N. H. 62. In some cases, as in *Rollins* v. *Ames*, 2 N. H. 349, and *Harrington* v. *Railroad*, 62 N. H. 77, remarks are made in regard to the disqualifying interest of jurors which were unnecessary to the disposition of the cases; in the cases referred to, the alleged disqualification, if it existed, was held to have been waived. And it may be suggestive of a lack of veneration for what has been assumed to be the ancient rule, that the doctrine of waiver has been somewhat liberally applied in such cases. *Ready* v. *Gas Co.*, 67 N. H. 147; *Hersey* v. *Hutchins*, 70 N. H. 130; *Bickford* v. *Franconia*, 73 N. H. 194, 196; *Barry* v. *Little*, 74 N. H. 319. If in a given case the defendant has not waived his right of challenge, and if after a verdict for the plaintiff it should appear that one of the jurors had slight, indirect, and remote pecuniary interest in the issue tried, of which he was entirely ignorant, the extreme technicality and injustice of applying such a rule of law would be plainly apparent. Verdicts ought not to be reversed by the court for supposed errors which could not have had, upon any theory, the slightest effect upon their rendition.

If a more extended discussion of this subject were necessary or desirable, it might be useful to consider whether one who has formed an opinion upon the merits of a case, which is so pronounced that it would require positive evidence to change it (*State* v. *Pike*, 49 N. H. 399, 406, 407; *State* v. *Sawtelle, supra*),

is not as much disqualified by a presumption of law, on account of his resulting interest and bias, to act as a juror, as one who has an indirect, contingent, or infinitesimal pecuniary interest in the issue to be determined. Why the real and fundamental question of bias and prejudice should be solved in a radically different method in the one case from what it is in the other, is not easily explainable upon any reasonable theory of modern judicial procedure. The fact is that the smallest pecuniary interest in the case does not necessarily disqualify a juror (*M. J. J.* v. *J. C. B.*, 47 N. H. 362, 368; *Moses* v. *Julian*, *supra*; *State* v. *Batchelder*, 6 Vt. 479; *Middletown* v. *Ames*, 7 Vt. 166); and it follows that the question in every case is one of fact to be determined at the trial by the exercise of a reasonable discretion in the impaneling of jurors, who are to be " as impartial as the lot of humanity will admit." Bill of Rights, *art.* 35. Without stating that the qualification of one to act as a railroad commissioner is the same as the qualification required of a juror, so far as the question of interest is concerned, we are convinced that if the question is tried as a fact in the one case, it is no less a fact to be found in the other.

If it is assumed that Mr. Putney at the time of his appointment had an indirect interest in railroads by virtue of his connection with the savings bank as a special depositor, he was not " interested " in the statutory sense, unless his interest prevented him from being " indifferent "; and whether it did or not is a question of fact, upon which it is not the duty or province of the justices to advise the governor and council.

Our advice therefore is, in brief, that it does not appear that Mr. Putney was, as a legal proposition, incapable of appointment; and it follows, in answer to the second question propounded, that his past and present occupancy of the office has not been and is not necessarily in conflict with the statute.

FRANK N. PARSONS.
REUBEN E. WALKER.
GEORGE H. BINGHAM.
JOHN E. YOUNG.
ROBERT J. PEASLEE.

April 6, 1909.