THOMAS W. ATHERTON

*v.*

CONCORD.

Argued May 8, 1968.
Decided August 23, 1968.

*Bois, Laflamme & Kalinski* ( *Mr. Maurice P. Bois* orally ), for Thomas W. Atherton, d/b/a Atherton Radio TV & Apliances.

*R. Peter Shapiro,* city solicitor ( by brief and orally ), for the city of Concord.

*Sulloway, Hollis, Godfrey & Soden* and *Martin L. Gross* ( *Mr. Gross* orally ), for the Concord housing authority.

LAMPRON, J. Petition for a writ of certiorari to review the proceedings of the board of aldermen of the city of Concord

when it adopted, on March 13, 1967, by a vote of 8 to 7, a resolution "Approving The Urban Renewal Plan And The Feasibility Of Relocation For Project No. N. H. R-13." See 42 U.S.C. *s.* 1455. This project is also known as "Capitol Plaza North Urban Renewal Project." The petition also sought an order quashing the vote thereon, a declaratory judgment that the adoption of the resolution was null and void, as well as other relief. As stated in his brief "the essence of the plaintiff's petition is that certain aldermen who voted in favor of the approval of the urban renewal project . . . were disqualified from voting because of a conflict of interest on their part."

"It is a general rule of law, and the law in New Hampshire, that 'there is a conflict of interest when a public officer votes on a matter in which he has a direct personal and pecuniary interest.'" *Preston* v. *Gillam,* 104 N. H. 279, 282; *Opinion of the Justices,* 104 N. H. 261, 264; 2 Davis, Administrative Law Treatise, *s.* 1203, *p.* 154; 58 Colum. L. Rev. 157, 175. The reasons for this rule are obvious. A man cannot serve two masters at the same time, and the public interest must not be jeopardized by the acts of a public official who has a personal financial interest which is, or may be, in conflict with the public interest. *Rollins* v. *Connor,* 74 N. H. 456, 458; *Genkinger* v. *New Castle,* 368 Pa. 547, 552; 47 Va. L. Rev. 1034, 1045.

However, the rule is also well established that, to disqualify, the personal pecuniary interest of the official must be immediate, definite, and capable of demonstration; not remote, uncertain, contingent, and speculative, that is, such "that men of ordinary capacity and intelligence would not be influenced by it." *Opinion of the Justices,* 75 N. H. 613, 616; *Mitchell* v. *Holderness,* 29 N. H. 523, 526; *Holderness* v. *Baker,* 44 N. H. 414, 418; *Rider* v. *Portsmouth,* 67 N. H. 298, 299; *Opinion of the Justices,* 104 N. H. 261, 264; *Papademas* v. *State,* 108 N. H. 456, 458.

The area of matters on which aldermen and other legislators must pass is of such a wide range that almost every legislator, whether he be in a private or public calling, or in neither, must inevitably have some interest which may conceivably be affected by some legislative proposal. See *Reilly* v. *Ozzard,* 33 N. J. 529, 550; 47 Va. L. Rev. 1034, 1035, 1045. It follows that, if every possibility of conflict, no matter how remote, uncertain, contingent, insubstantial or speculative, were cause for disqualification, many persons who are peculiarly suited for public of-

fice by the very reason of their commercial or professional experience would be prevented from contributing their services to the community. *Opinion of the Justices,* 75 N. H. 613; *Opinion of the Justices,* 104 N. H. 261; 107 U. Penn. L. Rev. 985, 986. Hence the soundness of the rule that only a direct personal and pecuniary interest on the part of an official in the matter under consideration requires his disqualification to act thereon. *Preston* v. *Gillam,* 104 N. H. 279, 281.

It was said in *Rollins* v. *Connor,* 74 N. H. 456, 458, that "whatever right a member of a legislative body may have to vote upon questions in which he may be interested, when the question under consideration is purely legislative, he cannot do so when the body is acting judicially." In the latter instance, a legislator is disqualified when he has a direct personal and pecuniary interest. *Rider* v. *Portsmouth,* 67 N. H. 298, 299. The Trial Court ruled that the action of the aldermen approving the capitol plaza north project was legislative. See *Wilson* v. *Long Branch,* 27 N. J. 360, 385. However it is unnecessary to decide whether this was a proper characterization of the nature of the board's action, as in judging the status of the persons whose votes are questioned by the plaintiff the Trial Court applied the stricter test which regulates disqualification when the board of aldermen is acting in a quasi-judicial or judicial manner. As a matter of fact the Trial Court (*Bownes,* J.) ruled that an indirect financial interest greater than any other citizen or taxpayer in the decision would disqualify an alderman or other city official from voting. See RSA 49-A:82 (supp).

The determination as to whether an alderman or other city official has a direct personal and pecuniary interest in the matter under consideration which will disqualify him from acting thereon is necessarily factual and depends upon the circumstances of the particular case. *Preston* v. *Gillam,* 104 N. H. 279, 282. Conflicts in the evidence are to be resolved by the Trial Court. *Streeter* v. *New Eng. Box Co.,* 106 N. H. 146, 148.

The Trial Court properly ruled that the Concord housing authority, which was the agency designated to carry out the execution of the capitol plaza north project, " is an independent municipal corporation . . . and not an agency of the city of Concord." RSA 203:4, 8. It is charged with providing safe and sanitary dwelling accommodations for persons of low income (*s.* 2). It has the right to acquire real property by the exercise of the power of eminent domain (*s.* 12) and the power

to issue bonds for any of its corporate purposes ( *s.* 14 ). Under RSA 205:2 such a housing authority can be charged with carrying out redevelopment projects initiated by the board of aldermen ( RSA 205:4 ) as was done in this case, with power to acquire property ( RSA 205:2 ). There was evidence that the Concord housing authority when exercising its two functions deals with completely separate federal agencies, calls upon completely separate funds and acts under two completely separate statutes.

In his petition, plaintiff alleged that " Alderman Robert D. Branch, who voted in favor of the resolution, was then and for a long time previously employed as an attorney by the Concord Housing Authority, the proponent of the project, and had also disqualified himself by prejudging the project as an *ex officio* member of the city planning board which had approved the project prior to March 13, 1967. He was disqualified from voting on said resolution on March 13, 1967. "

The fact that alderman Branch was a member of the planning board which unanimously voted in favor of this project does not prove that he had an interest in the project other than that of any other citizen and did not disqualify him to vote on March 13, 1967. *Rider* v. *Portsmouth,* 67 N. H. 298, 299; *N. H. Milk Dealers' Ass'n* v. *Milk Control Board,* 107 N. H. 335, 339; *Moskow* v. *Boston Redevelopment Authority,* 349 Mass. 553, 565, 566.

Mr. Branch by contract dated October 11, 1961 was employed as attorney by the Concord housing authority in its operation as developer of low-rent public housing ( RSA ch. 203 ) for a particular project known as Penacook Elderly Housing. This contract had terminated and Mr. Branch had been paid in full for his services before the vote questioned in these proceedings. On August 4, 1965 Mr. Branch entered into another similar contract with the Concord housing authority, again in its operation as developer of low-rent public housing ( RSA ch. 203 ), for another specific project known as John F. Kennedy Apartments. This contract had not been terminated on March 13, 1967. These contracts, except for being with the same housing authority, had no other connection with the capitol plaza project, the subject of the vote on the above date.

On October 28, 1964 Mr. Branch entered into an agreement with the Concord housing authority to serve as attorney in its operation of carrying out under RSA ch. 205 the redevelopment

project known as the capitol plaza north. In December 1965 an opinion was sought from the federal agency in charge of urban renewal regarding the compatibility of Mr. Branch serving as attorney while he was an alderman and a member of the planning board. An answer was received that this situation would constitute a conflict of interest under the terms of the contract with the federal agency. Whereupon Mr. Branch resigned in January 1966 as attorney under the contract with the housing authority relating to the capitol plaza north project.

There was also testimony by Mr. Branch that he had some arrangement as tenant in a building owned by Turcott Associates by which he would "swap rent for services," which "in a sense" is a retainer but "I do not represent them in everything." There was evidence that the Turcott Associates also owned property within the area of the capitol plaza. However there is no evidence that Mr. Branch was representing the associates in regard to this property. Mr. Branch testified "that as far as he knew he was not representing the Turcott Associates in any matter at the time of the questioned vote." Nor is there any evidence as to whether or not the associates favored or opposed the capitol project or ever made their feelings known to Mr. Branch. The latter testified that he had no personal interest direct or indirect in the project and that he could vote impartially and impersonally for the good of the city.

The Trial Court found that "Alderman Robert Branch was not barred by a conflict of interests from voting on the March 13, 1967, resolution." That his connections with the two low-rent housing projects, his prior position, as counsel for the housing authority in its urban renewal activity pertaining to capitol north, his membership on the city planning board and his attorney-client relationship with Turcott Associates "were too remote and insubstantial to give rise to a conflict of interests." We cannot say that these findings could not reasonably be made on the record nor can we say that the record required a ruling that Mr. Branch was disqualified as a matter of law. The findings and rulings of the Trial Court on these matters are upheld. *Streeter* v. *New Eng. Box Co.,* 106 N. H. 146, 148; *Levesque* v. *Hudson,* 106 N. H. 470, 475; *N. H. Milk Dealers' Ass'n* v. *Milk Control Board,* 107 N. H. 335, 339.

Plaintiff's challenge to the right of Attorney Malcolm McLane to vote as an alderman on the March 13, 1967 resolution is essentially the following. Alderman McLane is a partner in the

law firm of Orr and Reno and as such shares in its profits. One of his law partners talked to an owner of property in the project area about joining with an adjacent owner to thus provide a tract of land sufficiently large to interest an insurance company, with which this partner was connected, to locate thereon. There was evidence that this company had purchased property outside of the project in the year 1966 "for the purpose of relocating their building." An associate represented a tenant who was to be dispossessed by the redevelopment program and who might be interested in being a developer therein. Another of Mr. McLane's partners had been chairman of the Concord housing authority, from which he resigned in 1964; he represented a property owner in the project area and appeared before the urban renewal officials with his client to indicate its interest in being a redeveloper in the project and also to present some tentative ideas as to what it might do in that connection. Mr. McLane testified that he personally had nothing to do with any of the above clients or their interests in the project area but knew that conversations had been held with urban renewal officials by his partners and an associate. He testified that he understood that the administration and details, condemnation and choice of developers for capitol plaza north were matters for the housing authority and not for the board of aldermen. There was no evidence that Mr. McLane represented any client in the project area nor was there any evidence as to whether the clients of his partners and of an associate were for or against the project. The fact that clients of other members of his firm are interested as developers in the project does not conclusively prove that they are in favor of it. The plaintiff, who is strongly opposed to the project, submitted a document to the authorities part of which was a proposal for the construction of a two story building in the project area in association with a "business neighbor."

The Trial Court found that the above facts and Mr. McLane's "public sponsorship of the plan did not involve him in a conflict of interests or in any way bar him from participating in the vote on the resolution." We hold these findings and ruling proper.

Alderman David E. Tardiff had been assistant to Congressman James Cleveland during the summer of 1964 and was a friend and political supporter. Tardiff, Cleveland and Robert P. Bass, Jr. jointly purchased certain property in East Concord,

outside of the project area, which they still own. Tardiff knew that Cleveland and Bass owned other property bordering the project which may be increased in value by it. Mr. Tardiff testified that this consideration never entered his mind when he voted for the capitol plaza north project on March 13, 1967. The Trial Court found and ruled that these matters did not involve alderman Tardiff in a conflict of interests. We hold this action proper.

Alderman Allen R. Wiren is a communicant of St. Paul's Church, the owner of some property in the project area. He was chairman of its building committee which was originally opposed to the urban renewal plans. He ceased his office of vestryman and his membership on the Church building committee before he took office as alderman in January 1966. When changes were made in the project plans, the church agreed to go along with the urban renewal program. This was prior to the time Mr. Wiren terminated his membership on its building committee and before he began to serve as an alderman.

Alderman Edna McKenna served as a member of a citizen's advisory committee, named by the mayor, whose membership is to represent as far as practicable a cross section of interests in the city of Concord. It is to obtain all the information it can in order to make a recommendation to the board of aldermen on urban renewal matters. The committee recommended adoption of an urban renewal program. See RSA 205:9.

J. Herbert Quinn, who was mayor of Concord at the time of the vote in question is a former director of the Concord housing authority. He did not vote on the March 13, 1967 resolution. Although plaintiff's petition alleged that he was disqualified from participation in the debate on this resolution because of statements made to certain aldermen, no such evidence was introduced at the hearing.

We hold that on the evidence presented at the hearing, the Trial Court properly denied plaintiff's request for a finding "that Robert D. Branch, David E. Tardiff, Allen R. Wiren, Edna McKenna and Malcolm McLane, individually and collectively, had sufficient conflict of interest to taint the vote of March 13, 1967." We further hold that the Trial Court properly ruled "that none of the aldermen had a direct and pecuniary interest in . . . [the resolution] greater than any other citizen of Concord." Finally we hold that the evidence does not demand a ruling by this court that any member of the board of aldermen

of the city of Concord was disqualified as a matter of law from voting on the resolution of March 13, 1967 approving the "Capitol Plaza North Urban Renewal Project." *Rider* v. *Portsmouth*, 67 N. H. 298, 299; *Preston* v. *Gillam*, 104 N. H. 279, 282, 283; *N. H. Milk Dealers' Ass'n* v. *Milk Control Board*, 107 N. H. 335, 339.

*Exceptions overruled.*

DUNCAN, J., concurred in the result; GRIMES, J., dissented; the others concurred.

GRIMES, J., *dissenting:* In my opinion, a public official is disqualified from voting on a project when either he or his partners are employed by persons who are interested in or are affected by the project, and such disqualification does not depend upon the employment being directly concerned with the project itself, or upon proof that the official was actually influenced by the relationship or what the attitude of his other "master" was regarding the project, as suggested by the court.

In taking the position that aldermen Branch and McLane were therefore, disqualified by reason of conflict of interest, I am by no means suggesting that their votes were in fact influenced by improper considerations, for in my view it is the existence of the relationship itself which disqualifies regardless of the good faith or proper motives of the official.