Belknap,
No. 6296.

LACONIA HOUSING AND REDEVELOPMENT AUTHORITY

*v.*

MICHAEL S. EMANUEL AND

RITA C. EMANUEL.

July 28, 1971.

*Snierson, Chandler & Copithorne* ( *Mr. John P. Chandler* orally ) for the plaintiff.

*Baker & Page and Eugene C. Struckhoff III* ( *Mr. William A. Baker* and *Mr. Struckhoff III* orally ) for the defendants.

*David R. Decker*, Acting City Solicitor ( by brief and orally ) for the city of Laconia as amicus curiae.

*Normandin, Cheney & O'Neil* for Dennis O'Shea, Inc., Stelaur Corporation, John O. Richards and Sidney Rosen as amicus curiae, filed no brief.

GRIFFITH, J. Petition for declaratory judgment in which plaintiff seeks a ruling that it may proceed with the disposition to Realty Developers, Inc., of Laconia of parcel No. 7 on the Laconia Urban Renewal Plan disencumbered of defendants' claim that plaintiff has no legal right to dispose of parcel No. 7 without re-opening negotiations and considering defendants' redevelopment proposal. The petition was heard by Judicial Referee ( *Leahy* ) who found in favor of the plaintiff on all issues. Defendants' exceptions were reserved and transferred by *Keller*, C. J., on July 6, 1971. At the request of the parties who alleged that delay in decision could jeopardize the project and greatly increase construction costs, the matter was heard in this court on July 23, 1971. The parties waived the time requirements for briefs ( Supreme Court Rule 6 ) and filed their briefs on July 22, 1971.

Defendants were the owners and operators of a food mart located on land comprising about twenty-five per cent of parcel No. 7. Litigation is pending concerning the award of damages for the taking of defendants' land and title to all of parcel No. 7 is presently in the plaintiff.

The urban renewal and redevelopment plan for the entire area known as the Winnipesaukee River Urban Renewal Plan was first approved by the Laconia Housing Authority and the city of Laconia on September 2, 1965. Section 203 of the plan recites that one of the specific objectives in development is for Laconia Housing and Redevelopment Authority, " all other items being equal, " to give preference to owners within the project area as developers. Section 604E also refers to preference being given to businesses in the area as potential developers.

The defendants claim that they were not accorded preference by the plaintiff and that recognition of their preferential rights re-quires the plaintiff to refuse to deal with Realty Developers, Inc., and reopen negotiations with them.

The judicial referee found: " For two years the defendants and plaintiff have tried to work out an acceptable proposal. The plain-tiff has cooperated in every way to assist the defendants. The main reason for not accomplishing an acceptable proposal was the inability of the defendants to satisfy the plaintiff of their financial ability to perfect and carry through any proposal offered. Preferential treatment was given defendants until plaintiff could no longer delay the acceptance of a proposal that in the first stage of the negotiated method was acceptable and particularly where no proposal was submitted by defendants on January 28, 1971. "

The defendants argue that the evidence did not support this finding and it was so clearly erroneous that it could not reasonably be made. *See Walter* v. *Hagianis*, 97 N.H. 314, 316, 87 A.2d 154 ( 1952 ). From the evidence it appears that the plaintiff had after nearly two years of attempting to obtain a satisfactory proposal from defendants reached the point where time was of the essence in disposing of parcel No. 7. On December 31, 1970, defendant Michael Emanuel was delivered a letter telling him that other developers were now interested and outlining what would be required in the projected negotiated disposal method. The letter stated that January 28, 1971 would be the last day for submission of preliminary proposals and pointed out that since Emanuel had already submitted many of the requested items he might only need to update or complete the information to make his proposal current. On January 28, 1971, defendant requested through counsel an extension of time which was denied and his proposal which was submitted on February 16, 1971, was returned by plaintiff unopened. The proposal of Realty Developers, Inc. was the only proposal received on January 28, 1971, and was accepted one week later.

The parties all agree that the preferential treatment to be accorded the defendants was only applicable to situations where defendants' proposal and one of equal merit were being considered. It is obviously seldom that a true situation requiring preferential treatment will be presented to the authorities. *See* Brownfield, The Disposition Problem in Urban Renewal, 25 Law & Contemp. Prob., 732, 746 ( 1960 ). At the time of the acceptance of the Realty Developers, Inc., proposal, the plaintiff was not confronted with the situation of " all other items being equal. "

The evidence indicates and the judicial referee so found that the plaintiff made an honest attempt over a two-year period to assist the defendants to present an acceptable proposal. However, over that time period, defendants were never able to present a proposal meeting even the minimum standards required for consideration by the plaintiffs. The exigencies of time required the plaintiff to set a cut-off date of January 28, 1971, for the submission of proposals. Having worked with defendants for more than two years and having given due notice of the deadline, it was not unfair for the plaintiffs to refuse to grant defendants a time extension beyond January 28, 1971. Defendants knew as early as May 21, 1970, of the negotiated proposal procedure which the authority had decided to adopt, and yet they filed no proposal at all in compli-

ance with notice given under that procedure. The argument that the plaintiff accepted a proposal from Realty Developers, Inc., containing deficiencies which had resulted in rejection of defendants' earlier proposals was not accepted by the judicial referee and the evidence supports this finding.

The defendants also claim that plaintiff may no longer negotiate with Realty Developers, Inc., because of a claimed conflict of interest involving Attorney Rodney Dyer. It appears that Attorney Dyer represented Realty Developers, Inc., and was a director and officer of the corporation at the time their proposal was submitted on January 28, 1971. Subsequent to the acceptance of the Realty Developers, Inc., proposal, Attorney Dyer became a successful candidate for city council of Laconia and that body elected him mayor of Laconia. Defendants rely upon the statement in the urban renewal handbook that a member of the governing body of a municipality is ineligible to have any financial interest in a developer. In addition the loan and capital grant contract of the federal government with the plaintiff provides in section 704( B ) that plaintiff will adopt and enforce measures to assure that " no member of the governing body of the locality . . . voluntarily acquire any personal interest . . . in any contract in connection with the undertaking of the Project. "

After Attorney Dyer was elected mayor, he inquired as to whether there was any conflict of interest in his position and it was the then opinion of the attorney for the plaintiff that there was none. At the hearing before the judicial referee, Mayor Dyer stated that he would divest himself of any and all interest he may have in Realty Developers, Inc. The judicial referee found there was no conflict of interest detrimental to the defendants at the time of the acceptance of the proposal of Realty Developers, Inc. Since Attorney Dyer had no connection with either the plaintiff or the municipal government at that time such a finding was required by the evidence.

Nothing in either the urban renewal handbook or the loan and capital grant contract dictates invalidation of an acceptance or prohibits further negotiations because of a conflict of interest. While it might be argued that the plaintiff had determined the participation of Attorney Dyer was not contrary to the public interest in accordance with section 704A of the loan and capital grant contract in any event his divesture of his interest in Realty Developers, Inc., will remove any possible conflict.

RSA 203:6 dealing with conflicts of interest in the case of mem-

bers and employees of housing authorities imposes a more stringent rule than does section 704A of the loan and capital grant contract. Under this section of our statute, a member or employee disclosing interest in a contract may not participate in action by the authority on the contract. While this statute makes no mention of members of the municipal government, the action of Attorney Dyer in agreeing to divest himself of any interest in Realty Developers, Inc., is more drastic than contemplated by a statute dealing with officials more directly concerned than a mayor. In *Atherton* v. *Concord*, 109 N.H. 164, 168, 245 A.2d 387, 390 ( 1968 ), a conflict of employment by a municipal officer under urban renewal was cured by resignation of the employment.

It is not claimed that Attorney Dyer took any action as a member of the council or as mayor which related to the matters now in contention. Hence the claim of conflict of interest is not borne out by the evidence and the judicial referee's findings must stand.

The superior court shall issue forthwith a decree in accordance with this opinion authorizing the plaintiff to proceed with negotiations to sell parcel No. 7 of the Laconia urban renewal plan free and clear of all claims of the defendants upon severance by Attorney Dyer of any and all interest in Realty Developers, Inc. The record indicates that the legal proceedings in this case should be expedited and accordingly the certificate of this court will not await the usual thirty-day period but will issue on August 7 next. RSA 490:16; *Bell Shops, Inc.* v. *Rosenblatt*, 98 N.H. 162, 96 A.2d 204 ( 1953 ).

*Judgment for the plaintiff; remanded.*

GRIMES, J. did not sit; the others concurred.