Hillsborough,
No. 6422.

MANCHESTER FIRE FIGHTERS ASSOCIATION, LOCAL No. 856

INTERNATIONAL FIRE FIGHTERS ASSOCIATION, AFL-CIO

*v.*

CITY OF MANCHESTER.

September 29, 1972.

*Craig & Wenners* (*Mr. Vincent A. Wenners, Jr.* orally) for the plaintiff.

*J. Francis Roche,* city solicitor, by brief and orally, for the defendant.

GRIMES, J. Chapter 58 was adopted as an ordinance by the city of Manchester on September 4, 1945. Section 2 in part reads as follows: "An employee of the city of Manchester who retains membership in an existing State of New Hampshire Retirement System at the time of his or her retirement, and whose annual benefits as received therefrom at retirement, does not annually amount to a sum equal to one-half of their basic annual salary for the municipal fiscal year next preceding their retirement, shall when annually recommended and approved in accordance with the provisions of present existing pension laws by each respective board, commission, or official now having jurisdiction in such matters, receive annually thereafter, if necessary, from the city of Manchester a supplemental pension in an amount which when added to the annual benefits as received by them from said retirement system, will equal but not exceed one-half of the basic annual salary which they received for the municipal fiscal year next preceding their retirement . . . ."

The State retirement system provides for options so that the member may elect to take reduced payments during his lifetime and a designated beneficiary can receive benefits following the retired member's death.

The basic question is whether the Manchester ordinance provides supplemental payments based on the reduced amounts received under the State system in the event the retired employee has elected the optional benefits.

The dispute arose when in 1971 an alderman discovered that the city was and had been paying supplemental pensions based on the reduced amount received by those retired employees who had elected the optional provisions of the State retirement plan, and the board of aldermen on April 20, 1971, voted to suspend payments to those teachers and firemen who had elected options. The plaintiffs sought an injunction to prevent the city from suspending payments, and an order that the members of the association eligible for retirement benefits under RSA Chapter 100 or 102 were

entitled to supplemental benefits from the city to give them one-half their salary regardless of whether they had elected any of the options available under the State system. After a hearing, the trial justice ruled that the city was estopped to reduce or revoke the supplemental payments as previously made, and ordered that as to all firemen who have retired or are eligible for retirement, the city pay a supplemental pension which when added to benefits *"actually received"* under the State system will equal one-half the annual salary received for the year next preceding retirement and enjoined the city from reducing or revoking said benefits. The defendant's exceptions were transferred by *Johnson, J.*

Section 1 of chapter 58 provides that "on or before December 31, 1945, all employees of the city who are eligible, shall make application for and retain membership in any existing state retirement system of which he or she is now qualified to become a member . . . ." Section 2 provides for supplemental pensions to employees who retain membership in an existing State retirement system "in an amount which, when added to the annual benefits as received by them from said retirement system, will equal but not exceed one-half of the basic annual salary . . ." which they received in the preceding year. It does not specify any particular State retirement system and it refers to annual benefits "as received by them" without qualification and without reference to any reduced benefits due to the election of options.

It is true, as argued by the city, that when chapter 58 was first adopted in 1945, the State retirement plan for firemen did not include options. However, Laws 1945, Chapter 183, the predecessor to RSA Chapter 100, which was introduced into the house of representatives on January 31, 1945, as HB 200 and which was finally approved on May 18, 1945, to become effective July 1, 1945, did provide options for those Manchester employees coming under that plan. The pension committee which recommended the adoption of chapter 58 was meeting and considering the subject during the entire time that HB 200 was working its way through the legislative process, and it must be assumed that the committee was aware of it. By the time chapter 58 was adopted

on September 4, 1945, HB 200 had been enacted for some time. Yet chapter 58 of the ordinances makes no provision to alter the supplemental pension because of an election of such options.

Options were added to the State firemen's retirement plan by Laws 1949, Chapter 220, effective May 27, 1949. Chapter 58 when first enacted provided that employees whose retirement became effective after December 31, 1955, would not be eligible for supplemental pensions. The ordinance, however, has been amended on several occasions to extend its applicability to employees retiring during specified later periods of time. There have, however, been no amendments relating to options.

In construing the ordinance, it is proper for us to consider how it has been applied in practice by those entrusted with its administration. *Bellows Falls Hydro-Electric Corp.* v. *State,* 94 N.H. 187, 49 A.2d 511 (1946); *Opinion of the Justices,* 90 N.H. 568, 8 A.2d 597 (1939); 3 McQuillin, *Municipal Corporations s.* 12.143 (3d ed. rev. 1965). During the twenty-five years since its enactment, chapter 58 has in practice been interpreted to provide a supplemental pension which, when added to the amount "as received" from the State system, would give the retiree one-half his basic pay regardless of whether he elected an option. The trial court found that firemen who were about to retire were advised by the highest officials of the fire department that if they elected an option, they would still receive a supplement which would give them a full half-pay. Many firemen elected the options over the years and have been given supplemental amounts from the city to give them a total retirement amount of half-pay. These amounts were approved and recommended by the board of fire commissioners each year and the amounts were appropriated by the board of mayor and aldermen annually after being recommended by the Finance Committee.

There was evidence that communications from the State retirement system clearly showing the election of options were from time to time filed with the city auditor's office. The information submitted by the Finance Committee of the board of aldermen recommending supplemental pensions

clearly indicated from the years of service and the basic salary that the amount of State benefits was substantially less than it would be in the absence of options.

We hold therefore that under chapter 58 of the Manchester ordinances firemen upon retirement were and are entitled to receive supplemental pensions when annually approved by the fire commissioners in amounts which when added to the amount received from the State system will equal one-half their base pay regardless of whether or not they elect optional benefits under the State system. In view of this holding we do not rely on estoppel as the trial court did to determine the rights of firemen under the existing ordinance.

It appears that prior to December 31, 1966, chapter 58 had been amended to extend supplemental pensions to those whose retirement became effective before that date. It does not appear to have been amended again until August 3, 1971, when the date of December 31, 1966, was amended to read "December 31, 1971". It thus appears that those employees whose retirement had become effective prior to December 31, 1971, are entitled to receive supplemental benefits when annually approved as provided by the ordinance.

*Remanded.*

All concurred.