Grafton
No. 6784

## Gary E. Marsh

v.

## Town of Hanover; Neal G. Berlin, Hanover Town Manager; and Raymond L. Wood, Hanover Fire Chief

November 30, 1973

*Stebbins & Bradley (Mr. David H. Bradley* orally) for the plaintiff.

*Laurence F. Gardner* and *K. William Clauson (Mr. Clauson* orally) for the defendants.

KENISON, C.J. The principal question to be resolved in this case is whether the Hanover town manager has authority to dismiss the plaintiff for an alleged conflict of interest. The plaintiff is a captain of the Hanover fire department and holds the responsibility for directing the publicly operated Upper Valley Regional Emergency Medical Care Service which provides both emergency and transfer ambulance services. After notifying the town manager of his intent to participate during his off-duty hours in a private transfer ambulance service owned by his wife, the plaintiff was informed that such employment would be incompatible with his duties in the fire department and would result in his dismissal from public service. The plaintiff filed a petition for declaratory judgment seeking answers to the following questions, which were reserved and transferred by the Trial Court (*Loughlin,* J.) together with an agreed statement of facts:

1. May the plaintiff be dismissed by the Hanover town manager without cause?

2. Is the proposed participation of the plaintiff in the proposed private transfer ambulance service sufficient cause for his dismissal if the town discontinues its transfer ambulance service?

3. Is the proposed participation of the plaintiff in the proposed private transfer ambulance service a sufficient cause for his dismissal if the town does *not* discontinue its transfer ambulance service?

Inasmuch as the parties require an expeditious resolution of the questions presented by this case, the supreme court rules relating to the filing of briefs and oral argument were

waived. Supreme Court Rules 4, 6 and 7; RSA 490:App. R. 4, 6 and 7; *see Seabrook v. Perkins,* 112 N.H. 37, 38, 288 A.2d 688, 689 (1972). This agreed case was signed by counsel on November 1, 1973, and argued on November 8, 1973.

The answer to question 1 turns on whether the Hanover selectmen have imposed limits on the town manager's general statutory authority to dismiss employees of the town government. The town of Hanover is a municipal corporation having a modified form of town government under special legislative charter (Laws 1973, ch. 15; Laws 1963, ch. 374). Its selectmen have broad statutory authority to direct town affairs, including the power to appoint and supervise a town manager pursuant to RSA 37:2 and 3. The town manager is responsible for the administration of the town government and is specifically empowered by RSA 37:6 II "to remove . . . subordinate officers and employees under his control." RSA 37:6 VII (d) charges the town manager with the duty of supervising the fire department, subject to the direction of the selectmen and to the bylaws of the town.

On May 19, 1969, the board of selectmen adopted by unanimous vote a "Town of Hanover Personnel Policy" which states, *inter alia,* that department heads may apply disciplinary measures to maintain high efficiency and proper personal conduct on the part of the employees. The policy lists twelve "causes for disciplinary action", none of which refers to a conflict of interest, and authorizes the department heads to suspend or dismiss employees "as may be necessary." It specifically declares that "dismissals are discharges or separations made for serious cause" and requires the approval of the town manager for such action.

The plaintiff contends that the approval of the personnel policy by the selectmen gave it the force of a bylaw (*see* Laws 1963, 374:7) and restricted the town manager's statutory authority to remove employees under RSA 37:6 II. In support of this argument, the plaintiff points to the fact that a copy of the policy is given to all regular employees who recognize that its terms are binding on them and to the fact that the town follows the procedure outlined in the policy when dealing with personnel problems. The defendants reject the plaintiff's interpretation of the effect of the selectmen's

approval of the policy and assert that the selectmen intended the policy only to establish guidelines and not to curtail the town manager's statutory authority of removal. The defendants draw attention to the fact that four of the five selectmen (only one of whom was on the board in 1969) stated to the defendants' counsel in an executive session that they so regard the policy.

In *American Federation of State &c. Employees v. Keene,* 108 N.H. 68, 227 A.2d 602 (1967), we interpreted a statute similar to RSA 37:6 II and held that "'[t]he power to appoint officers or employees of a municipal corporation carries with it the power of removal of such employees at the municipality's pleasure unless the power of removal is restricted by statutory law.'" *Id.* at 71, 227 A.2d at 605 (quoting 3 C. Antieau, Municipal Corporation Law 288.31 (1971)). While no such law was brought to our attention in that case, the existence of the personnel policy in the present case appears to be such a restraint.

As a general rule, it is immaterial whether an action by the board of selectmen is labelled a "bylaw" if the selectmen have indicated an intent that the action should be so construed. *Lisbon v. Clark,* 18 N.H. 234, 238 (1846); 1A Sutherland, Statutory Construction §30.03 (4th ed. C. Sands 1972). In this case the approval of the policy by the selectmen and its subsequent distribution to the town employees suggest an intent to enact the policy as a bylaw to act as a rein on the town manager's removal powers under RSA 37:6 II. *Cf.* K. Davis, Administrative Law Text §§ 4.02, .03 (1972).

The preface of the policy reinforces this interpretation in that it explicitly states that: "Personnel relationships are greatly simplified through the use of *standard personnel policies.* Improved morale and increased efficiency results as employees gain an understanding of employee benefits and the policies which *govern* their work. Employees witness a *consistency* and *fairness* in all personnel problems" (emphasis added). The combined effect of the italicized portions cuts against the defendants' attempt to characterize the policy as a mere guideline. *Plymouth School Dist. v. State Bd. of Ed.,* 112 N.H. 74, 77, 289 A.2d 73, 75 (1972); *State v. Folland,* 100 N.H. 188, 190, 122 A.2d 268, 270 (1956); *see* 1A Suther-

land, Statutory Construction §30.06 (4th ed. C. Sands 1972). Furthermore, since the town has permitted its employees to consider themselves "bound" by the policy, and has in fact complied with its terms, their expectation as to its force adds weight to a construction which establishes the policy as a bylaw. *Manchester Fire Fighters Ass'n v. Manchester,* 112 N.H. 343, 346, 295 A.2d 461, 463 (1972); 3 E. McQuillin, Municipal Corporations §12.143 (3d ed. 1965).

While it does not appear that the policy was published in accordance with RSA 47:18, we have held that such a defect does not render a bylaw invalid. *Dover Housing Bd. v. Colbath,* 106 N.H. 481, 483, 213 A.2d 923, 925 (1965). Moreover, the assertion by four of the five selectmen that the policy was only intended as a guideline is not persuasive, especially where only one of them was a member of the board at the time of approval. Since the personnel policy indicates that dismissal must be for serious cause, it follows that the plaintiff may not be dismissed without cause and the answer to question 1 is "no."

The answers to questions 2 and 3 depend in part on a determination that the town manager has authority to remove an employee for a conflict of interest. Since the twelve causes of disciplinary action listed in the personnel policy do not refer to situations involving a conflict of interest, the thrust of the inquiry focuses on whether those causes were intended by the selectmen to be the sole grounds on which an employee could be removed.

Although the New Hampshire legislature has enacted specific prohibitions for isolated instances of conflict of interest, *see, e.g.,* RSA ch. 95; RSA 492:2, there is no general statute on the subject which could have given the selectmen reason to believe the town manager's removal authority was broader than that specified in the policy. *Opinion of the Justices,* 104 N.H. 261, 264, 183 A.2d 909, 912 (1962); *see Bourne v. Sullivan,* 104 N.H. 348, 353, 186 A.2d 834, 838 (1962). Likewise, the policy itself provides little guidance as to their intent — the causes are merely listed without an explanation as to whether they represent the limits of the town manager's removal authority.

It is commonly recognized, however, that "statutes are not

to be construed as making any changes in the [common] law unless that intention is clearly indicated by its [sic] terms ....." *Manchester Housing Auth. v. Belcourt,* 111 N.H. 367, 370, 285 A.2d 364, 366 (1971); *Ham v. Maine-New Hampshire Interstate Bridge Auth.,* 92 N.H. 268, 273, 30 A.2d 1, 5 (1943). The common law of New Hampshire identifies a conflict of interest where a potential exists for a public officer to influence the outcome of a matter in which he has a direct personal and pecuniary interest. *Atherton v. Concord,* 109 N.H. 164, 165, 245 A.2d 387, 388 (1968); *Preston v. Gillam,* 104 N.H. 279, 282, 184 A.2d 462, 465 (1962). Such conflict normally arises in a context where an official is acting in a judicial or legislative capacity. *See, e.g., Sherman v. Brentwood,* 112 N.H. 122, 290 A.2d 47 (1972); *Atherton v. Concord,* 109 N.H. 164, 245 A.2d 387 (1968); *N.H. Milk Dealers' Ass'n v. Milk Control Bd.,* 107 N.H. 335, 222 A.2d 194 (1966). However, the general principle underlying this law applies to all public servants, Kaplan and Lillich, *Municipal Conflicts of Interest: Inconsistencies and Patchwork Prohibitions,* 58 Colum. L. Rev. 157, 167 (1958); 3 C. Antieau, Municipal Corporation Law §22.10 (1971), and hinges on the idea borrowed from the common law of trusts that those in public employment have an obligation to act solely in the interests of the cestui que trust — the public. *Atherton v. Concord,* 109 N.H. 164, 165, 245 A.2d 387, 388 (1968); Note: *Conflict of Interests: State Government Employees,* 47 Va. L. Rev. 1034 (1961); *see* Note: *Conflict of Interests and the Municipal Employee,* 20 Buffalo L. Rev. 487, 488-93 (1971).

Since the town manager and his department heads are responsible under the terms of the policy for the "proper personal conduct" on the part of the town employees, it is unlikely that the selectmen intended to withdraw the power of removal as an administrative remedy to deal with an employee who is confronted with a conflict of interest. The integrity of town government depends on assurance that its operations are not tainted by the private interest of public employees. *See* Eisenberg, *Conflicts of Interest Situations and Remedies,* 13 Rutgers L. Rev. 666, 666-73 (1959). Accordingly, we hold that the town manager has authority under RSA 37:6 II to remove an employee for a conflict of interest and

is not limited to those causes enumerated in the personnel policy.

As a general rule, "public officials should not have a personal interest in the business transactions in which they are engaged for government, nor should they exploit their influence or acquaintances with persons who conduct transactions so that businesses in which they have a personal interest are profited." *Id.* at 686. In New Hampshire the requisite personal interest has been defined as a pecuniary interest which is "immediate, definite, and capable of demonstration; not remote, uncertain, contingent and speculative, that is, such 'that men of ordinary capacity and intelligence would not be influenced by it.'" *Atherton v. Concord,* 109 N.H. 164, 165, 245 A.2d 387, 388 (1968) (quoting *Opinion of the Justices,* 75 N.H. 613, 616, 72 A. 754, 756 (1909)); *see* Note: *Conflict of Interests: State Government Employees,* 47 Va. L. Rev. 1034, 1045-56 (1961). Whether or not a conflict of interest exists is ordinarily a question of fact and depends on the circumstances of a particular case. *Preston v. Gillam,* 104 N.H. 279, 282, 184 A.2d 462, 465 (1962).

In applying the pecuniary interest test to the factual situation presented in this case, it is important to draw a distinction between emergency and transfer services. The former is only available for life-threatening or emergency situations which require an immediate transportation of a patient to a hospital whereas the latter is utilized for the purpose of transferring an ill or injured patient on a licensed physician's order and does not involve life-threatening situations. The characteristics of a transfer service thus enable it to schedule the transportation of patients in advance.

At the present time the plaintiff is the director of the Upper Valley Regional Emergency Medical Care Service by which the town of Hanover conducts both an emergency and transfer service. *See* RSA ch. 151-B (Supp. 1972). The service provides ambulance transportation to eleven towns in New Hampshire and Vermont and is funded by a charge assessed against each patient transferred and by an annual assessment against each town to make up the balance. From January 1, 1973, to July 1, 1973, this regional service made 44 transfer

runs out of a total of 239 runs and these transfer runs produced $1,540 in revenue.

The plaintiff has established in his wife's name a private transfer service called the Paramedic Ambulance Transfer Service which is designed to deal exclusively with the nonemergency transportation of patients and has expended approximately $7,500 for the purchase of an ambulance. They intend to employ several policemen and firemen during their off-duty hours on a part-time basis, but no employee, including the plaintiff, will be permitted to work more than twenty hours per week to avoid conflict with the personnel policy's prohibition against a full-time town employee carrying on other full-time employment. The plaintiff has stated that he neither expects nor wishes a recommendation from the town's emergency service dispatcher on any call received concerning transfers and urges that such calls should be referred to an independent source for a complete listing of all such service available in the area.

If the town discontinues the transfer service, the plaintiff contends that no conflict of interest will arise from his role as the director of the town's emergency service and his employment in the private transfer service because of the different characteristics of the two services. The defendants disagree with such a distinction and argue that the plaintiff will be in "an ambiguous dual position" in personnel relations with those firemen employed by the private service, in negotiations with hospitals concerning the working conditions and compensation for both the public and private services, and in situations involving the grey area of ambulance transportation lying between the pure emergency and the routine transfer.

We are persuaded by the circumstances of this case that the distinction between emergency and transfer services is significant and as such does not present the plaintiff with antagonistic duties in respect to them. *See* Kaplan and Lillich, *Municipal Conflicts of Interest: Inconsistencies and Patchwork Prohibitions,* 58 Colum. L. Rev. 157, 174-79 (1958). The defendants' objections are speculative and offer little evidence that the plaintiff will derive pecuniary benefit from his dual position.

However, if the town does not discontinue its transfer service, we are of the opinion that the facts give rise to the opposite conclusion. The public and private services will be in competition for the same dollar and will place the plaintiff in a position where the interest of the town in providing service to transfer patients for the purpose of reducing its operational costs is in clear conflict with his interest in promoting his wife's business. *Atherton v. Concord*, 109 N.H. 164, 165, 245 A.2d 387, 388 (1968).

Accordingly, the answer to question 2 is "no," but the answer to question 3 is "yes."

*So ordered.*

All concurred.