Carroll,
Feb. 1, 1938.

TUFTONBORO *v.* IVA M. WILLARD.

*Hughes & Burns, Charles F. Hartnett* and *William N. Rogers* (*Mr. Hughes* orally), for the plaintiff.

*Jewett & Jewett* (*Mr. Theo S. Jewett* orally), for the defendant.

WOODBURY, J. The first part of the defendant's motion raises the issue of the sufficiency of the evidence to sustain the master's findings and rulings, and in order to pass upon this issue we must consider the competency of the evidence upon which those findings and rulings are based.

The testimony concerning the existence and location of the faced wall referred to in the statement of facts was admissible to show the location of the westerly line of the highway. "The erection of a fence or wall as a permanent structure along the side of a wrought road is more probably than not intended to mark the line separating highway use from private occupancy and possession, in the absence of evidence that it was not thus intended. As physical barriers such structures, especially stone walls apparently designed as permanent boundaries, normally denote separation and distinction of use, and are notice of the line to which use is made." *Hoban* v. *Bucklin*, 88 N. H. 73, 80.

The contention of the defendant that the length of the wall, forty-six feet, is too short to provide an adequate basis for the determination of a straight line; that it is so short in relation to the length of the road that in reason it would have to be treated as a point about which a line might rotate depending upon its course, is not borne out by the facts. The wall presented a faced surface to the highway. It was straight, or so nearly so that its slight deviations from mathematical perfection could be ignored, and the highway was laid out in a straight line. Under these circumstances it would obviously be possible for a surveyor to do what one of the surveyors who testified said that he had done, that is, to determine the course of the face of the wall and then to extend this line in either direction both to the main highway and to the shore of Lake Winnipesaukee.

The testimony of the aged witness relative to the acts of the surveyor who laid out the wall when he was asked about its location was also admissible. This evidence tended directly to show the location of the westerly line of the highway and it also tended to corroborate the inference that the wall was on that highway line. The surveyor's nod in response to the question asked him was, under the circumstances, tantamount to an oral declaration by him that

the wall was being placed under his direction on the dividing line between the land dedicated to public use as a highway and that remaining in private ownership. The witness' testimony concerning this nod was hearsay, but, there was evidence that the surveyor was dead, that at the time of his nod he was in a position to have had knowledge whereof he spoke, and there was nothing to indicate any motive on his part to misrepresent. These facts render the surveyor's declaration admissible under a well recognized exception to the hearsay rule which will be discussed hereafter.

The deeds of lots in the cemetery adjoining the defendant's premises on the north were also admissible. No case in this state precisely in point has come to our attention, but elsewhere (principally in Massachusetts) recitals in ancient deeds of adjacent lands, although neither party claims under them, are admissible to show the location of common boundaries, and this is so when the boundary is a private one (*Sparhawk* v. *Bullard,* 1 Met. (Mass.) 95; *Morris* v. *Callanan,* 105 Mass. 129; *Boston &c. Co.* v. *Hanlon,* 132 Mass. 483; *Townsend* v. *Johnson,* 3 N. J. L. 279) as well as when the boundary is that of a public right or of a political subdivision of the state. *Drury* v. *Railroad,* 127 Mass. 571, 581; *Hathaway* v. *Evans,* 113 Mass. 264; *Randall* v. *Chase,* 133 Mass. 210; *Weld* v. *Brooks,* 152 Mass. 297, 305.

The rule enunciated in the above cases falls within the limits of the exception to the hearsay rule mentioned above in connection with the declaration of the deceased surveyor as that exception has been developed in this state. This exception admitting the declarations of deceased persons concerning boundaries is of long standing. It has been recognized here for over a century and in the course of that time many cases involving its application have been decided. *Shepherd* v. *Thompson,* 4 N. H. 213; *Lawrence* v. *Haynes,* 5 N. H. 33, 37; *Pike* v. *Hayes,* 14 N. H. 19; *Smith* v. *Powers,* 15 N. H. 546, 563; *Great Falls Co.* v. *Worster,* 15 N. H. 412; *Melvin* v. *Marshall,* 22 N. H. 379; *Adams* v. *Stanyan,* 24 N. H. 405; *Morrill* v. *Foster,* 33 N. H. 379, 386; *Wendell* v. *Abbott,* 43 N. H. 68; *Adams* v. *Blodgett,* 47 N. H. 219; *Smith* v. *Forrest,* 49 N. H. 230; *Morse* v. *Emery,* 49 N. H. 239; *State* v. *Vale Mills,* 63 N. H. 4; *Lawrence* v. *Tennant,* 64 N. H. 532; *Keefe* v. *Railroad,* 75 N. H. 116; *Morrison* v. *Noone,* 78 N. H. 338; *Smart* v. *Huckins,* 82 N. H. 342.

At first this exception appears to have been regarded as but one manifestation of the earlier one under which were admitted the declarations of a person deceased or unavailable, if made by him against his interest. Soon, however, these exceptions were recog-

nized as separate and distinct, (*Pike* v. *Hayes, supra*), but it was many years before the restrictions applicable to the older exception were lifted from the newer one. This confusion in thought is not difficult to understand since there are many instances in which a declaration concerning a boundary might be admissible under either, but nevertheless, they must be distinguished if they are to be clearly understood.

The declarations of a person, if made against his interest, are admissible under a very ancient exception to the rule against hearsay evidence. 3 Wig., Ev. (2d *ed.*) *s.* 1455. "The Exception presupposes, like most of the others, first, a Necessity for resorting to hearsay, . . . *i. e.* the death of the declarant, or some other condition rendering him unavailable for testimony in court; and, secondly, a Circumstantial Guarantee of Trustworthiness . . . in this instance, the circumstance that the fact stated, being against the declarant's interest, is not likely to have been stated untruthfully." *Id.*

The exception to the hearsay rule admitting extra-judicial statements concerning boundaries stands upon a different footing. Here the necessity for receiving such statements arises from the unavailability of the declarant coupled with the fact that landmarks are perishable and records are oftentimes incomplete or inaccurate. The requirement that before a declaration of boundary is admissible it must appear that the declarant had knowledge of the bound of which he spoke, and the further requirement that there must appear no interest or motive on his part to misrepresent, provide the circumstantial guarantee of truth upon which this exception rests. 3 Wig., Ev. (2d *ed.*), *ss.* 1565, 1566.

As this latter exception has been developed in this state it is no longer essential to show that the declarant was, at the time of his declaration, the owner or occupant of the land involved, or that he ever had been its owner or occupant. *Keefe* v. *Railroad*, 75 N. H. 116; *Morrison* v. *Noone*, 78 N. H. 338. Nor does it now have to be shown that the declaration was made while the declarant was upon the land. *Lawrence* v. *Tennant*, 64 N. H. 532. These facts have evidentiary value on the issue of the declarant's knowledge of the bound concerning which he spoke, but they are not, standing alone, determinative of his qualification. Other matters may as well be shown to indicate a declarant's knowledge.

The recitals made by the grantors and accepted by the grantees in the ancient deeds offered by the plaintiff tended to show the location of the highway in relation to monuments now in existence and

they are admissible as declarations of boundaries under the above exception to the hearsay rule. While there is no direct evidence that the grantors therein had actual knowledge of the bounds of the land conveyed, yet "The general presumption and fair legal intendment are, that any man knows the situation of his real property, both as to its boundaries and possession." *Smith* v. *Forrest*, 49 N. H. 230, 236. This is not a violent presumption and we hold it sufficient to qualify the grantors in the deeds as having knowledge of the boundaries mentioned therein. There being nothing to indicate a motive on their part to misrepresent, it follows that their declarations are admissible.

These deeds could also have been admitted in evidence under another exception to the hearsay rule which permits the introduction in evidence of deeds and other private documents to prove the reputation of matters of general and public interest recited therein. *Bow* v. *Allenstown*, 34 N. H. 351.

The fact that in the deeds the lengths of the east and west boundary lines of the properties conveyed are not stated with absolute precision but are given only as "about" so many feet from the known bound to the highway does not affect their admissibility. It only tends to detract from their evidentiary value. When as here, however, the *termini* of those lines, as measured by a surveyor, fall upon either the face of the wall or its line produced, their weight as evidence is not to be ignored.

Evidence of the act of the defendant's predecessor in title in erecting and maintaining the line of logs along his property in line with the cemetery wall was also admissible. *Hoban* v. *Bucklin*, 88 N. H. 73, 77. Although there is no direct evidence that he placed the logs where he did to mark his boundary, his act had some tendency to show the extent of his claim of ownership because it was shown that he erected and maintained them to prevent trespassing. From this evidence of his purpose it might be inferred that he would place the logs on the line of his land as he understood it. This evidence has some, though possibly not great, evidentiary value.

In further support of the master's findings it might be mentioned that any location of the highway further to the east than that which he found would place the layout, to some extent, in the river. The defendant recognizes that such a layout would be unlikely and attempts to explain it by suggesting that in the course of the years since 1855 the river has eaten into its right bank near its mouth and eroded the land over which the highway was originally established.

It suffices to say in answer to this contention that the evidence of erosion to any such extent as that contended for is too meager to require serious consideration.

The evidence considered by the master on the issue of the location of the highway was admissible, and, if not quite strong enough to compel a finding for the plaintiff as a matter of law, it having the burden of proof, it was clearly strong enough to support the findings and to indicate with reasonable certainty the exact location of the way.

The contention of the defendant contained in the second part of her motion to have the findings of the master set aside is that the form of this action is improper. Her position is that instead of attempting to determine the boundary of the old highway the town should have brought a petition for its relocation, presumably paying compensation for the land taken. This part of the motion is based upon the proposition that the highway cannot now be located with any reasonable degree of certainty. It is said that any finding of its former location must necessarily be based upon such inadequate evidence that to deprive the defendant of property on its strength would be unreasonable and amount to a deprivation of her property without due process of law.

This entire argument comes to nothing because, as appears above, there is ample evidence to sustain the findings of the master as to the precise location of the way. It follows, then, that those findings must be sustained unless the master disqualified himself from acting in the matter at all.

His alleged disqualification is said to arise from the fact that after the case was submitted to him, and before he had announced his decision, he was retained by the town to represent it as counsel before the legislature in relation to matters having no bearing or connection with the case at bar. After hearing in the Superior Court it was found as a fact that the master accepted employment by the plaintiff in good faith and without thought of his duties as master in this case, and that his employment did not in any way influence his findings. The question presented to us is whether that employment operated to disqualify the master as a matter of law.

We do not believe that it did. Article 35 of Part I of the Constitution of New Hampshire, which provides for the impartiality of the judiciary, applies to jurors as well as judges (*Opinion of the Justices*, 75 N. H. 613, 617 and cases cited) and to "every legal tribunal." *Moses* v. *Julian*, 45 N. H. 52, 55. There can be no doubt of its ap-

plicability to masters, referees and auditors. While it renders those to whom it applies incompetent to preside at the trial of those cases in which they have appeared as counsel (*Moses* v. *Julian, supra*), no case has come to our attention in which it has been held to disqualify one who has been counsel for a party in a matter wholly unrelated to that upon which he has been called upon to preside. "Merely to have been counsel for one of the parties does not disqualify." Bouv., Law Dict. (8th *ed.*) *Tit.* Judge. This appears to state the rule in the great majority of American jurisdictions. 33 C. J., 1002, 1003.

With this rule we are content. Such bias or prejudice as may be engendered in a master as a result of his former general employment and his duties as an attorney at law for one of the litigants is so patent and obvious that a conscientious judicial officer is sure to recognize its presence and take steps to guard against its results. On the other hand, a bias or prejudice resulting to one from his having advocated a legal principle in a litigated case is more hidden and subtle, and consequently more likely to escape conscious evaluation, but even this bias, standing alone, has never, so far as we can discover, been held to operate as a disqualification as a matter of law. 3 Bl., Comm. 361. But if a judge has been counsel, when a lawyer in practice, for one of the litigants in the same case which later comes before him as a judge, he is thereby disqualified to sit in that case. In other words when the two prejudices or biases occur in combination they disqualify, but either disassociated from the other does not. The reason for this is that "the law will not suppose a possibility of bias or favor in a judge, who is already sworn to administer impartial justice, and whose authority greatly depends upon that presumption and idea." 3 Bl., Comm. 361, cited in *Hutchinson* v. *Railway*, 73 N. H. 271, 275.

The argument for disqualification is here strengthened by reason of the fact that the relation of attorney and client between the master and the plaintiff subsisted during the pendency of this case, but we do not feel that it is thereby strengthened to such an extent as to require its acceptance.

The matter in which the master appeared for the plaintiff was wholly foreign to that which he was called upon to decide between it and this defendant. He was not even employed by the plaintiff in a litigated case, as that term is ordinarily used, and, while we feel that it was unfortunate for him to have accepted that employment before rendering his decision in this case, we do not consider that

his disqualification follows therefrom as a matter of law. The question of whether or not that employment operated to disqualify the master as a matter of fact was one for the Superior Court. That court has decided it adversely to the defendant, and, the evidence offered on this issue not having been transferred, the finding of indifference there made is not reviewable here.

*Exceptions overruled.*

All concurred.