Hillsborough,
No. 5697.

GORDON RUSSELL, JR.

*v.*

EARL EMERSON *& a.*

Argued February 6, 1968.
Decided March 29, 1968.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* and *Dort S. Bigg* ( *Mr. Bigg* orally ), for the plaintiff.

*Sheehan, Phinney, Bass & Green* and *Joseph F. Devan* ( *Mr. Devan* orally ), for the defendants.

GRIMES, J. Lake Horace, formerly called Weare Reservoir, was created about 1914 by the erection of a dam on the Piscataquog River by the Weare Improvement and Reservoir Association ( WIRA ). The area in dispute is a point or peninsula which projects into the lake from the northerly shore adjoining land admittedly owned by the plaintiff. There are no bounds or other indications on the ground which separate the point from the plaintiff's land. The disputed area, which is wild and undeveloped, is inaccessible by land since the flooding except over property admittedly owned by the plaintiff.

The plaintiff traces his title from conveyances from Collins to Dodge and Barnard, dated March 1899; from Dodge and Barnard to WIRA, dated December 1912; from WIRA to Horace O. Chase, dated October 1921; from Chase to Mildred Moultrop ( the plaintiff's mother ) by will dated April 1937; and deed of Moultrop to plaintiff, dated May 1950. The 1950 deed from Moultrop to the plaintiff admittedly includes the area in dispute.

The defendants trace their title from deed of the executor under the will of Sabina A. Paige to James W. Baker, dated 1882; from James Baker and Phoebe Baker to John Emerson, dated 1908; and from John Emerson by descent. This was a 20-acre lot. The inventory filed in the probate records of John Emerson's estate included no real property but the inventory was amended to include the disputed area after this action was started. There was evidence that prior to his death John Emerson conveyed land on Lake Horace to a son and daughter and told his daughter that he had disposed of all the real estate that he owned. The master found that he had not conveyed the disputed area to anyone. Earl Emerson testified, however, that his father ( John ) had given him the disputed land but had not made out a deed before his death. The river ran through this 20-acre lot and when the dam was erected, the land was flooded. The question in this case is whether the point of land involved is a part of that lot which remained above the surface of the lake.

The deed from Collins to Dodge and Barnard in 1899 describes the southerly boundary of the plaintiff's land as "beginning at a stake on the North line of the rangeway by land of Phoebe A.

Baker." The description then runs northerly, westerly and southerly "to a maple tree marked on the North line of the rangeway; thence Easterly by the North line of the rangeway to the bound first mentioned."

The property conveyed to John Emerson by James W. Baker and his wife Phoebe is described as being bounded "Northerly by land now or formerly of Dodge and Barnard and land of Ernest Paige" and as being part of "Lot 69 in the Third Range from the north side of said Weare."

There was evidence of use of the point by all the parties and their predecessors as well as by other persons for recreational purposes. There were no boundaries found on the point and no demarcation line left as a result of lumbering operations conducted by Dodge and Barnard. The evidence relating to the payment of taxes was inconclusive.

Defendants introduced as an ancient document a map dated 1888 taken from the history of Weare which purports to show the layout of the town. The third range from the north side is numbered the fifth range from the south side and contains Lot 69. The Piscataquog River is shown flowing through the northwesterly corner of Lot 69 and there are symbols showing that this corner of the lot is meadow or bottom land. A revision of this same map published in the 1959 supplement to the town history purporting to show the location of roads, buildings and Lake Horace was excluded from evidence but marked for identification. While this revised map shows a point of land extending into Lake Horace in the northeast corner of Lot 69, it was properly excluded. It could not qualify as an ancient document. There was no evidence as to who prepared the map and a finding of trustworthiness was not compelled. *Perry* v. *Parker,* 101 N. H. 295.

Defendants also introduced into evidence as Exhibit L subject to exception a tracing from a plan on file with the New Hampshire Water Resources Board entitled "Plan of Proposed Reservoir at North Weare, N. H." and which bears the legend that it was drawn in 1912 by one Frank Gay, C.E., of Manchester. Defendants' surveyor admitted that this plan was a composite and not reliable as to scale.

The plaintiff introduced into evidence an aerial photograph, ( Exhibit 10 ), which shows the lake and surrounding area and a topographic map of the area, ( Exhibit 16 ) which also shows the lake and the point in question.

The master ruled that the plaintiff had failed to sustain his burden of proving title by adverse possession but found that it was more probable than otherwise that the disputed area was included in the deed from Collins to Dodge and Barnard dated March 9, 1899, and that title thereto passed by subsequent conveyances to the plaintiff. We hold that this finding is supported by the evidence.

Defendant's contention that his northerly boundary includes the disputed property is based primarily upon the westerly projection of the line of a stone wall which is located on another peninsula of land easterly across the lake. This stone wall runs easterly and westerly for a short distance but does not run westerly to the edge of the lake but before reaching the lake turns at about a right angle and runs southerly. A projection of the east-west part of this wall westerly across the lake cuts across the peninsula which is the subject matter of this dispute at the place which defendant claims as his northerly boundary. On the assumption that this stone wall marks the north side of the rangeway referred to in the deed from Collins to Dodge and Barnard, the westerly extension of this line would form the southerly boundary of the plaintiff's property and therefore the northerly boundary of the defendants' land and would establish defendants' title to the disputed property. However, there is nothing in the evidence which required a finding that the stone wall marked the rangeway which separated Lot 69, in which defendants' land was described as being located, from the land which passed through successive conveyances from Dodge and Barnard to the plaintiff. In fact, the shortness of the wall, the fact that it did not run into the water, and that it was a single wall could lead to a finding that it was not a range line.

The basis for the plaintiff's claim, accepted by the master, is as follows: Certain roads were shown as running along the rangeways on the 1888 town plan ( Exhibit J ). On cross-examination, defendants' surveyor located these portions of the roads upon the aerial photographs ( Exhibit 10 ) and the topographic map ( Exhibit 16 ). By an extension of these lines, the southeast corner of Lot 68 was located on both Exhibit 10 and Exhibit 16. Using the measurements for the town lots as shown on the 1888 map, defendants' surveyor reconstructed on Exhibits 10 and 16 the boundaries of Lot 69. The land in question fell outside Lot 69 as thus reconstructed on Exhibit 16 and just the tip was included as reconstructed on Exhibit 10. The northerly boundary of Lot

69 as thus established on the topographic map (Exhibit 16) when extended westerly seems, from certain identifiable points on the lake, to coincide with a lot line separating land of Chase and Bartlett appearing on the Plan of a Proposed Reservoir (Exhibit L). This lot line on Exhibit L if extended easterly runs southerly of the point of land in question. It was the opinion of the plaintiff's engineer that this line established the boundary of the defendants' and the plaintiff's property. This is consistent with the properly admitted evidence that Horace Chase, a predecessor in title to the plaintiff, had stated in the twenties that he owned what now is the disputed area, that he wanted his daughter to build a camp on it, and had pointed out as a bound a large tree standing in the water some twenty feet off the point. *Tuftonboro* v. *Willard,* 89 N. H. 253, 257; *Perley* v. *Roberts,* 91 N. H. 254. There was evidence and the master found that such a tree did stand in that location.

Defendants complain that the master erred in placing the burden of proof on them to show that their ownership excluded the ownership of the plaintiff in the disputed area. This question becomes immaterial because in finding that the plaintiff's title includes the disputed area, the master placed the burden on the plaintiff and found he had sustained it.

*Exceptions overruled.*

GRIFFITH, J., did not sit; the others concurred.