Merrimack
No. 7003

### STATE OF NEW HAMPSHIRE
*ex rel.* MELDRIM THOMSON, JR., GOVERNOR

v.

### STATE BOARD OF PAROLE

July 31, 1975

*Warren B. Rudman,* attorney general, and *David W. Hess,* assistant attorney general *(Mr. Hess* orally), for the State.

*Devine, Millimet, Stahl & Branch* and *Silas Little III (Mr. Millimet* orally) for the State board of parole.

*Stanley M. Brown,* by brief and orally, for Gerald R. Prunier.

*Upton, Sanders & Smith* and *Robert Upton II* and *John F. Teague (Mr. Robert Upton II* orally) for Frederick J. Martineau.

*Maynard, Dunn & Phillips (Vincent P. Dunn* orally) for Russell Nelson.

PER CURIAM. The State of New Hampshire *ex rel.* Meldrim Thomson, Jr., Governor, filed a petition for a writ of certiorari in the Merrimack County Superior Court on August 14, 1973, challenging the paroles of Frederick J. Martineau and Russell Nelson for failure by the State board of parole to adhere to certain procedural standards requiring timely notice to the proper officials and for its failure to disqualify a board member who has a conflict of interest. Laws 1971, 419:1 (RSA 607:31 [Supp. 1972], repealed November 1, 1973); New Hampshire Board of Parole, Rules and Procedures, Parole of Lifers (September 30, 1971); *id.* Conflict of Interest; *see* RSA 651:37. Although neither Martineau nor Nelson was named by the State as defendant, both were served and permitted to participate due to their interest in the case.

*Bois,* J., reserved and transferred the exceptions to his findings that the paroles were void as the result of the appearance of a

conflict of interest on the part of Gerald R. Prunier, a member of the board of parole, and to other findings and rulings. Martineau and Nelson were remanded to the custody of the State subject to its agreement not to incarcerate until a final determination by this court.

The issues presented by this appeal are whether under article 41 of the New Hampshire constitution, the Governor has standing to challenge the legality of the board's decision to parole; whether a writ of certiorari is an appropriate means for challenging the legality of actions by a State administrative agency; and whether an alleged conflict of interest of one parole board member or a claimed failure by the board to provide timely notice of the parole hearing to the proper individuals rendered the board's decision to parole void.

On November 15, 1959, Martineau and Nelson were convicted of first degree murder "with capital punishment". *See State v. Nelson,* 103 N.H. 478, 479, 175 A.2d 814, 815-16 (1961). During the trial they were represented by out-of-State counsel and by Richard Leonard of the firm of Leonard & Leonard in Nashua, New Hampshire. Leonard acted in his capacity as court-appointed counsel through the course of various appeals in state and federal courts until the sentences were changed to life imprisonment on July 24, 1972. *State v. Martineau,* 112 N.H. 278, 280, 293 A.2d 766, 767 (1972); *Furman v. Georgia,* 408 U.S. 238, 239-40 (1972); *see Hancock v. Nelson,* 363 F.2d 249 (1st Cir. 1966); *Nelson v. Hancock,* 239 F. Supp. 857 (D.N.H. 1965); *State v. Nelson,* 105 N.H. 184, 196 A.2d 52 (1963). During the thirteen years in which Leonard acted as an attorney for Martineau and Nelson, he received only the statutory maximum fee of $500 which was paid and exhausted at an early stage in the proceedings. *See* RSA 604-A:5.

Gerald R. Prunier first became associated with Leonard's law firm in July 1967, shortly after graduating from law school. Two and one-half years later on January 1, 1969, Prunier became Leonard's law partner. Although Prunier was aware that Leonard represented Martineau and Nelson, he never worked on the case, discussed it with Leonard, or received compensation in connection with it. Leonard testified that from the time the trial ended in November 1959 to the termination of his own involvement in July 1972, no one else in his law office did any work whatsoever on the Martineau-Nelson case.

In September 1971, Prunier was appointed to a three-year term

on the then newly established State board of parole. *See* Laws 1971, 419:1 (RSA 607:31 [Supp. 1972], repealed November 1, 1973); RSA 651:37. As a result of the change of their sentences from capital punishment to life imprisonment, Martineau and Nelson became immediately eligible to be considered for parole on July 24, 1972, under the statutes and rules applicable at that time. Laws 1971, 419:3 (RSA 607:41-a [Supp. 1972], repealed November 1, 1973) (Eligibility for Release; Life Sentences), reenacted as RSA 651:45-a; Laws 1971, 419:6 (RSA 607:51-a to c, repealed November 1, 1973) (Credits Against Sentences), reenacted as RSA 651:55-a to c. New Hampshire Board of Parole, Rules and Procedures, Parole of Lifers (Eligibility) (September 30, 1971); Laws 1971, 419:1 (RSA 607:31 [Supp. 1972], repealed November 1, 1973); *see* RSA 651:37.

At a hearing on August 17, 1972, the board of parole considered the eligibility of Martineau and Nelson for parole and voted unanimously to place the two men on a "work or study release in the community with close supervision for an indefinite period with monthly progress reports to the board." No consideration of the actual decision to parole Martineau and Nelson was then made by the board. At that time Prunier disclosed his association with Leonard to the two other members of the board who determined that "there was no possibility of a conflict of interest . . . because he (Prunier) was in high school when the bulk of the action took place."

After the August 1972 meeting the board of parole, pursuant to its rules governing the parole of prisoners sentenced to life, instructed Robert Johnson, the State parole officer, to notify the judge, the attorney general, the county attorney and the arresting authority who were involved in the case in 1959 in order to solicit their opinions regarding the possibility of paroling Martineau and Nelson. New Hampshire Board of Parole, Rules and Procedures, Parole of Lifers (Eligibility) (September 30, 1971); Laws 1971, 419:1 (RSA 607:31 [Supp. 1972], repealed November 1, 1973); *see* RSA 651:37, :45-a. In letters directed to the board of parole dated December 19, 1972, William J. O'Neil and Conrad Danais, who were respectively an assistant attorney general and the county attorney involved in the trial, registered their opposition to paroling the two men. The judge who presided at the trial declined to comment on the question of parole. Although Louis Wyman, the attorney general at the time of the trial, could not be reached directly, his opposition to parole of the two men was made known

to the board by Conrad Danais. The opposition of Elmer Bourque, another assistant attorney general who participated in the trial, and Joseph Regan, the arresting authority, was conveyed to the board by Johnson at its meeting on December 21, 1972.

On July 19, 1973, the State board of parole voted unanimously to parole Martineau and Nelson "subject to the receipt of updated psychiatric reports providing they are favorable." Martineau and Nelson were paroled on August 5, 1973.

## I. Standing of the Governor

Both Martineau and Nelson contend that the Governor lacks standing to challenge the alleged failure by the State board of parole to follow constitutional and statutory mandates. Their contention is premised on the idea that since the Governor has suffered no actual injury as a result of the board of parole's actions, he is not entitled to sue the board. *See Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 152 (1970).

"The purpose of the law of standing is to protect against improper plaintiffs." K. Davis, Administrative Law Text § 22.04, at 427 (1972); *see* L. Jaffe, Judicial Control of Administrative Action 459 (1965). Whether one is a proper plaintiff to bring an action against an administrative agency is ordinarily a judicial determination based upon a finding that he has sustained the requisite "injury in fact". *New Hampshire Bankers Ass'n v. Nelson,* 113 N.H. 127, 128-29, 302 A.2d 810, 811 (1973); K. Davis, *supra* § 22.05, at 429; *see id.* § 22.08, at 438.

In this case, however, the specific language and the history of the amendment to part II, article 41 of the New Hampshire constitution reveal that a prior determination has been made that the Governor is a proper party to pursue court action against State agencies which fail to comply with the law. In 1964, part II, article 41 was amended to provide that the Governor "may, by appropriate court action or proceeding brought in the name of the state, enforce compliance with any constitutional or legislative mandate, or restrain violation of any constitutional or legislative power, duty, or right, by any officer, department or agency of the state." N.H. CONST. pt. II, art. 41; J. of Const. Con. 287 (1964). The purpose of the amendment was clearly to give the Governor greater responsibility for the control of administrative action by entrusting him with the power "to institute proceedings to make the departments

behave and obey the law." J. of Const. Con. 288 (1964); *id.* at 290; *Opinion of the Justices,* 113 N.H. 141, 148, 303 A.2d 752, 756 (1973).

The petition for writ of certiorari alleges that the State board of parole violated constitutional requirements and its own rules in paroling Martineau and Nelson. N.H. CONST. pt. I, art. 35; Laws 1971, 419:1 (RSA 607:31 [Supp. 1972], repealed November 1, 1973); *see Ferretti v. Jackson,* 88 N.H. 296, 298, 188 A. 474, 476 (1936). Under these circumstances part II, article 41 of the New Hampshire constitution grants to the Governor the capacity to insure by "appropriate court action" that the board of parole acted in accordance with the applicable rules of law in paroling Martineau and Nelson.

## II. Appropriateness of the Writ of Certiorari

Nelson and the board of parole argue that even if the Governor has standing, a writ of certiorari in superior court is not an appropriate means for challenging the alleged procedural irregularities in the board's actions.

Traditionally, the courts of this State have not permitted procedural form to frustrate a colorable substantive claim. *Simpson v. Simmons,* 114 N.H. 690, 693, 327 A.2d 708, 710 (1974); *Dupuis v. Smith Properties,* 114 N.H. 625, 628, 325 A.2d 781, 782 (1974); *Owen v. Weston,* 63 N.H. 599, 600, 4 A. 801, 802 (1885); *see* K. Davis, Administrative Law Text § 24.01, at 459 (1972). One commentator has noted that "[a]n imaginary system cunningly planned for the evil purpose of thwarting justice and maximizing fruitless litigation would copy the major features of the extraordinary remedies." K. Davis, Administrative Law Text § 24.01, at 458 (1972).

As a device for reviewing administrative agency action, the permissible scope of certiorari includes whether the agency has acted "illegally with respect of jurisdiction, authority or observance of the law." *Landaff School Dist. v. State Bd. of Educ.,* 111 N.H. 317, 318, 282 A.2d 678, 679 (1971); *Cloutier v. State Milk Control Board,* 92 N.H. 199, 203, 28 A.2d 554, 557 (1942). The superior court has original jurisdiction, concurrent with that of this court, to entertain a petition for writ of certiorari. *Quinn v. City of Concord,* 108 N.H. 242, 245, 233 A.2d 106, 108 (1967); *Nelson v. Morse,* 91 N.H. 177, 178, 16 A.2d 61, 62 (1940). Since the State's basic contention

is that the board of parole violated procedures required by law in paroling Martineau and Nelson, the petition for a writ of certiorari was a proper remedy.

## III. Conflict of Interest

Prunier, the board of parole, and Nelson and Martineau maintain that the trial court erred in ruling that as a matter of law the board was required to disqualify Prunier from sitting in the Martineau and Nelson cases due to an apparent conflict of interest. Although the trial court found that Prunier received no personal or financial gain whatsoever from the parole of Martineau and Nelson, it determined that Prunier's association with Leonard created an appearance of a conflict of interest sufficient to require disqualification under constitutional and statutory standards, and under the board's own rules. N.H. CONST. pt. I, art. 35; RSA 490:App. R. 25 Canon 3 C (1) (b) (Supp. 1973) (Code of Judicial Conduct); New Hampshire Board of Parole, Rules and Procedures, Board Meetings and Hearings, Conflict of Interest (September 30, 1971). Under the rules of the board of parole which necessitate, in the absence of a waiver of the rule by the board, approval of all three members for the parole of prisoners serving life sentences, the disqualification of Prunier would render the paroles of Martineau and Nelson invalid. New Hampshire Board of Parole, Rules and Procedures, Board Meetings and Hearings, Quorum (September 30, 1971).

Although legislative proposals have been made, there is no general statutory provision in this State governing conflicts of interest. *See* N.H.S. Bill 344 (1975). Insofar as the judiciary is concerned, part I, article 35 of the New Hampshire constitution specifies that it is the "right of every citizen to be tried by judges as impartial as the lot of humanity will admit." *See Cheshire v. Keene,* 114 N.H. 56, 59, 314 A.2d 639, 641 (1974); *Tuftonboro v. Willard,* 89 N.H. 253, 260, 197 A. 404, 409 (1938); *Moses v. Julian,* 45 N.H. 52, 54-55 (1863). The Code of Judicial Conduct requires that a "judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where . . . a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter . . . ." RSA 490:App. R. 25 Canon 3 C (1) (b) (Supp. 1973).

Public officials occupying administrative positions are governed

by a somewhat different standard which as a practical matter recognizes that those who serve the State on a part-time basis often serve, or have served, society in other roles as well. As it has evolved through the decisional law the rule is a reasonable one under which a conflict of interest exists if an administrative official "votes on a matter in which he has a direct personal or pecuniary interest." *Atherton v. Concord,* 109 N.H. 164, 165, 245 A.2d 387, 388 (1968); *Opinion of the Justices,* 104 N.H. 261, 264, 183 A.2d 909, 912 (1962). To require disqualification, the interest of the official must be "immediate, definite, and capable of demonstration; not remote, uncertain, contingent, and speculative." *Atherton v. Concord, supra* at 165, 245 A.2d at 388: *Marsh v. Hanover,* 113 N.H. 667, 673, 313 A.2d 411, 415 (1973).

Whether an interest requires disqualification depends upon the particular circumstances of the case. *N.H. Milk Dealers' Ass'n v. Milk Control Board,* 107 N.H. 335, 339, 222 A.2d 194, 198 (1966). In this instance there were specific findings by the trial court that Prunier had no pecuniary or personal interest whatsoever in the parole of Martineau and Nelson. At the time Martineau and Nelson were tried in 1959, Prunier was still a high school student in Massachusetts. The testimony is unchallenged that Prunier had no contact with any aspect of the case from 1967 when he first became associated with Leonard in the practice of law to the end of Leonard's involvement with the case in July 1972. Leonard never represented Martineau and Nelson before the board of parole, nor did he discuss the question of parole with Prunier.

Applying these facts to its own rule requiring disqualification of a member "having any connection, family or otherwise", the board of parole determined that there was "no possibility of a conflict of interest" on the part of Prunier. New Hampshire Board of Parole, Rules and Procedures, Board Meetings and Hearings, Conflict of Interest (September 30, 1971). The trial court's ruling that the board was required by law to disqualify Prunier cannot be upheld.

## IV. Notice

The State argues that the board's action in paroling Martineau and Nelson is nevertheless void because the board failed to give timely notice of the parole hearing to the proper officials as required by its own rules. In cases involving individuals sentenced to life

imprisonment, the board of parole's rules require the "sentencing judge, the attorney general, the county attorney where the offense took place and the arresting authority in the city or town where the crime took place" to be notified 60 days prior to the pending hearing. New Hampshire Board of Parole, Rules and Procedures, Parole Eligibility, Parole of Lifers (September 30, 1971).

Testimony of the board members who drafted the rule indicated that the purpose of the notice requirement was to solicit the views of those with the best knowledge of the prospective parolee. In accordance with that purpose it has been the custom of the board to notify the people originally involved in the case rather than those currently occupying the positions enumerated in the rule. Neither statute nor common sense mandates a different procedure. Laws 1971, 419:1 (RSA 607:31 [Supp. 1972], repealed November 1, 1973); *see* RSA 651:37.

By the end of December 1972, the board of parole had obtained the views of the sentencing judge, the assistant attorneys general, the attorney general, the county attorney and the arresting authority who were involved in the case in 1959. Since no actual decision to parole was made until July 19, 1973, the board acted in conformity with the requirements of its notice rule.

The trial court's decree that the paroles of Martineau and Nelson were void due to a conflict of interest on the part of Gerald R. Prunier is vacated.

*So ordered.*

DUNCAN, J., did not sit.