Grafton
No. 78-278

FRANCIS C. SEELY AND ELIZABETH T. SEELY

v.

JAMES H. HAND, NANCY T. HAND AND
NEW HAMPSHIRE SAVINGS BANK

May 9, 1979

*Orr & Reno, P.A.*, of Concord (*Mary Susan Leahy* orally), for the plaintiffs.

*Wescott, Millham & Dyer*, of Laconia (*Peter V. Millham* orally), for the defendants.

BROCK, J.   The question in this case is the sufficiency of evidence establishing the location of obliterated monuments that define the boundary between lakeshore parcels owned by the plaintiffs and the defendants Hand.

At one time the two parcels were owned by G. Thornton Young. In 1940, he conveyed the parcel now owned by the Hands to Edward G. Mellus. The deed to Mr. Mellus defined the parcel as follows:

> Beginning at a stone post on the northerly side of Point Road, so-called, at the southwesterly corner of land of James A. Lobban; thence northerly by said Lobban land One Hundred Fifty (150) feet, more or less, to a stone post on the shore of Newfound Lake; thence southwesterly by the shore of said lake Two Hundred Seventy-Five (275) feet, more or less, to a stone post; thence southerly by other land of the grantors to a stone post on the northerly side of Point Road; thence easterly by said road Two Hundred Fifty (250) feet, more or less, to the bound first mentioned.

The 1972 deed to the Hands refers back to this description. The plaintiffs acquired their adjacent parcel in 1962 directly from G. Thornton Young by a deed describing their parcel as being bounded on its easterly side by the defendant's parcel as described in the 1940 deed. New Hampshire Savings Bank holds a mortgage on the Hands' parcel and its interest is identical to theirs.

In 1976 the plaintiffs brought this petition to quiet title in Grafton County Superior Court to establish the boundary between their land and that of the defendants. After a full hearing, including a view, the Master (*Joseph F. Daschbach*, Esq.) recommended that the plaintiffs' petition be granted and the boundary established along the line that they claimed. The Trial Court (*Batchelder*, J.) issued a decree in accordance with these recommendations and reserved and transferred the defendants' exceptions.

The plaintiffs claim that the boundary runs from the paved road north to a monument located near the southwest corner of a log cabana, and is an extension of the boundary between lots seven and eight south of the road. The defendants claim that the northwest and southwest corner monuments referred to in the deed cannot be located, and that the boundary runs from a drill hole exactly 275 feet along the lake shore from the northeast corner stone to a point exactly 250 feet along the road from the southeast corner stone.

In construing an ambiguous boundary description, monuments, especially marked corners, prevail over courses and distances. *Fagan v. Grady*, 101 N.H. 18, 21, 131 A.2d 441, 444 (1957). "If the monuments themselves have disappeared, the positions where they were placed may be shown, and, when established with reasonable certainty by evidence, they govern, just as the monuments . . . would."

6 G. THOMPSON, REAL PROPERTY § 3044, at 586 (perm. ed. 1962). The defendants contend that the master made three errors: first, in admitting into evidence a handdrawn map; second, in finding that the southeast corner had been moved; and third, in finding that a monument located near the cabana marked the northwest rather than the southwest corner.

## I. *The Map*

The defendants excepted to the master's ruling admitting into evidence a sketch map of the area showing the boundary line as claimed by the plaintiffs. Mr. Seely testified that G. Thornton Young had given him the map, together with a copy of the 1940 deed description, and had told Mr. Seely that the map showed Mr. Seely's property. Mr. Seely had had custody of the map since 1962 and testified that he had made no marks or alterations on it. Mr. Thomas Moran, a professional surveyor, testified that, in his professional opinion, the handdrawn map had largely been traced from a plat plan, also in evidence, from the Grafton County Registry of Deeds. He further testified that the distances on the handdrawn map corresponded to the distances stated in the 1940 deed description. The age and appearance of the document, together with the testimony and the court's comparison of the handwriting, were sufficient to establish that the map was what the plaintiffs contended, a map drawn by Mr. Young prior to the 1940 conveyance to Mellus. *Lawrence v. Tennant*, 64 N.H. 532, 539, 15 A. 543, 545 (1888). It is, however, technically hearsay evidence.

The map does not fall within the ancient document exception to the hearsay rule because it was made for a private purpose, without the official authorization or recognition that provides adequate assurance of reliability. Annot., 46 A.L.R.2d 1318, 1333 (1956); *cf. Russell v. Emerson*, 108 N.H. 518, 240 A.2d 52 (1968).

The map was, however, properly admitted as a statement of a deceased person with knowledge of the location of the boundary and with no motive to misrepresent. *Town of Tuftonboro v. Willard*, 89 N.H. 253, 197 A. 404 (1938). Mr. Young drafted the deed description when he severed the parcels and obviously had knowledge of the boundary. In 1940, he would have had no motive for misrepresenting the boundary. In construing the description, the fact finder must determine what the parties intended at the time of the conveyance. *Frew v. Dasch*, 115 N.H. 274, 278, 339 A.2d 18, 20 (1975); 6 G. THOMPSON, REAL PROPERTY § 3022, at 448 (perm. ed. 1962). The master found the map trustworthy and helpful in determining Mr. Young's intent when he drafted the description, and properly admitted it. *Perry v. Parker*, 101 N.H. 295, 297, 141 A.2d 883, 884–85 (1958).

## II. *The Southeast Corner*

The defendants challenge the master's finding that Mr. Hand must have moved the monument at the southeasterly corner of his parcel some two feet to the west. The record contains uncontradicted testimony that the present monument is located directly on top of the original one. The master's speculation is, however, harmless error. The deed stated the distance along the road as "250 feet, more or less." The actual distance between the southeasterly monument and the line established by the master is 248 feet. We deem two feet to be a reasonable variation from the stated distance of 250 feet. *See* 27A WORDS & PHRASES, *More or Less—Realty* 222–24 (1961); *cf. Smart v. Huckins*, 82 N.H. 342, 346, 134 A. 520, 522 (1926).

## III. *The Northwest Corner*

The defendants contend that the master erred in considering the monument at the cabana as the northwest, rather than the southwest, corner of their lot. The area between the cabana and the paved road is a steep slope about forty feet wide, covered with brush. The cabana is on the sandy beach, at the high water mark. All three witnesses who testified about the obliterated monument referred to it as being on the beach at the high water mark. Mr. Moran, the professional surveyor engaged by the plaintiffs, testified that the monument marking the northeast corner was located along the same high water mark, not at the water's edge. There was also testimony supporting the master's corresponding finding that the southwest corner monument, like the southeast corner, had been located "quite close to the paved surface of Whittemore Point Road" and may have been obliterated when the road was widened. The line defined by monuments as located by the master is consistent with the testimony of several witnesses that the boundary line was roughly perpendicular to the road and was an extension of the boundary line south of the road. The location of the monuments and the determination of a boundary conforming to the calls in the deed were questions of fact for the master, and as they are supported by the evidence they must stand. *Starvish v. Farley*, 115 N.H. 598, 602, 347 A.2d 175, 177 (1975); *Sheldon v. Sevigny*, 110 N.H. 419, 422, 272 A.2d 134, 136 (1970).

*Exceptions overruled.*

All concurred.