Belknap
No. 83-157

BRADLEY WALLACE & a.

v.

LAKES REGION CONSTRUCTION COMPANY, INC.

April 9, 1984

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Bartram C. Branch* and *Robert C. Dewhirst* on the brief, and *Mr. Branch* orally), for the plaintiffs.

*Cullity & Kelley*, of Manchester (*John C. Boeckeler* on the brief and orally), for the defendant.

KING, C.J. The question presented is whether medical records introduced at trial for the purpose of arguing a negative inference

were admissible evidence when the authenticity and completeness of the records were never established. For the reasons which follow, we reverse the decision of the superior court, admitting the medical records over the objection of the plaintiffs, and remand the case for a new trial on the issue of damages only.

This case involves actions for damages for personal injury and loss of consortium arising from a motor vehicle accident in which the plaintiff Bradley Wallace was struck by a vehicle operated by an agent of the defendant, Lakes Region Construction Company, Inc. In March 1983, a jury in Belknap County Superior Court rendered a $120,000 verdict for Bradley Wallace and a $12,500 verdict for Barbara Wallace.

During a hearing in chambers prior to trial, counsel for the defendant moved to introduce medical records which described the original diagnosis and treatment of Bradley Wallace following the accident. The records were allegedly prepared by Dr. William F. Ketterer, the physician who performed the initial examinations of Bradley Wallace at the Laconia Clinic. Dr. Ketterer's records are on the forms of the Laconia Clinic, with Bradley Wallace's name, address, date of birth and file number on each page. Each entry in the records is date-stamped and bears the typed name of William F. Ketterer, M.D., followed by a slant and the initials of the typist.

The transcript indicates that defense counsel posited the admissibility of the records on the ground that the plaintiffs' expert witness, Dr. Ettelson, relied upon them in evaluating Bradley Wallace's condition. In response, the plaintiffs' counsel asserted that there was no evidence that Dr. Ettelson ever relied upon the records in his diagnosis and treatment of Bradley Wallace. The defendant's counsel argued further that the records were admissible because they would have been "significant" in the expert's consideration of a hypothetical question posed by the plaintiffs' counsel during the expert's deposition. The plaintiffs' counsel also objected to the use of the medical records for the purpose of arguing a negative inference.

The Trial Judge (*Pappagianis*, J.) permitted the admission of the records into evidence, and the plaintiffs' exception to the ruling was noted.

During the trial on the merits, defense counsel used the medical records to argue by negative inference that the absence of any reference in Dr. Ketterer's notes to Bradley Wallace's complaints of left leg pain—a condition described by Dr. Ettelson in his deposition—indicated that Bradley Wallace never complained of any left leg pain during the course of his initial treatment by Dr. Ketterer after the accident. Defense counsel further argued that the complete absence of an entry regarding left leg pain in Dr. Ketterer's records

indicated that Bradley Wallace indeed never suffered an injury to his left leg.

The plaintiffs' counsel filed a motion to set aside the verdict, with respect to damages only, on two grounds: first, that the use of the hearsay medical notes to argue a negative inference was improper; and second, that the medical records were inadmissible under the business records exception to the hearsay rule, RSA 521:2, without in-court testimony by the custodian of the records, or another competent witness, as to the identity and mode of preparation of the records. The motion was denied by the Superior Court (*Pappagianis*, J.), and the plaintiffs' exception was noted. This appeal followed.

 Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. *State v. Marcotte*, 124 N.H. 61, 64, 466 A.2d 949, 951 (1983). It is generally inadmissible unless it falls within one of the many traditional exceptions to the hearsay rule. *See Town of Weare v. Paquette*, 121 N.H. 653, 658–59, 434 A.2d 591, 595–96 (1981).

The business records exception to the hearsay rule, codified at RSA 521:2, provides:

> "A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

 The rationale behind extending the business records exception to include medical records was to bring accurate and reliable records into the courtroom in order to "strike a sensible balance between the conflicting interests of the medical profession . . . and the discovery of truth in litigation." *Walker v. Walker*, 106 N.H. 282, 290, 210 A.2d 468, 473 (1965). Courts and commentators have assumed that the systematic preparation of medical records in the modern hospital or clinic, together with the fact that these records are routinely relied upon by physicians in their diagnosis and treatment of patients, safeguard the trustworthiness of medical records. *See* MCCORMICK ON EVIDENCE § 313, at 730 (2d ed. 1972).

 The business records exception requires the proponent of the document to produce the custodian of the record, or another qualified witness, to testify about the identity and mode of prepara-

tion of the proffered document, and to testify that it was made in the regular course of business at or near the time of the transaction recorded. "[V]erification of the authenticity, regularity and correctness of such records by 'the official having them in charge,'" *Williams v. Williams*, 87 N.H. 430, 431, 182 A. 172, 173 (1935) (citation omitted), or by another qualified witness, constitutes the proper foundation for admission of the proffered record. Without the required testimony of a competent witness attesting to the authenticity and reliability of the record, the record remains inadmissible hearsay evidence.

■ Whether the record is "sufficiently verified to justify its admission is a preliminary question of fact for the trial judge to pass upon." *Williams v. Williams supra*. We will not disturb the decision of the presiding justice unless it is clearly erroneous. *Town of Weare v. Paquette*, 121 N.H. at 659, 434 A.2d at 596.

At trial, the defendant's counsel offered no proof, through a witness, of the identity of the person responsible for keeping Dr. Ketterer's records, or of the manner in which the records were customarily kept. *See Williams v. Williams*, 87 N.H. at 432, 182 A. at 174. There was no evidentiary basis for the trial judge to determine whether the records were complete or whether the records would be misleading to anyone but Dr. Ketterer.

In defense of the trial court's decision to admit Dr. Ketterer's records, the defendant argues that the records satisfied the "apparent trustworthiness" rule of admissibility, first enunciated in *Hutchins v. Berry*, 75 N.H. 416, 419, 75 A. 650, 653 (1910). In *Hutchins* the court held that an account of business receipts was admissible due to its "probable truthfulness," although the keeper of the account was unavailable (he had died) to testify at trial. *Id.* The *Hutchins* court further opined that objections to the apparent trustworthiness of the account went to the weight and not the admissibility of the account. *Id.*

Likewise, in *Gagnon v. Pronovost*, 97 N.H. 500, 503, 92 A.2d 904, 906 (1952), the court applied the apparent trustworthiness rule to uphold the admissibility of a memorandum book of business transactions, although there was no indication that the book was kept in the usual course of business or in the performance of any legal or moral duty. Here, too, the out-of-court declarant was dead. *Id.* The *Gagnon* court relied upon the statement of the trial judge that the memorandum book "'appears to be authentic. . . . It has an aura of being truthful and of some help, and for that reason I am going to admit it. . . .'" *Id.*

The defendant argues that the unavailability of the out-of-court

declarant is not a necessary prerequisite to application of the apparent trustworthiness rule. The defendant contends that the court's opinion in *Perry v. Parker*, 101 N.H. 295, 141 A.2d 883 (1958), supports the proposition that evidence of "circumstantial probability of trustworthiness," *id.* at 297, 141 A.2d at 884, is alone a sufficient foundation for admission of a record. In *Perry* we held that a recorded plan of land from the register of deeds was admissible, although the surveyor who prepared the plan never testified at trial.

The defendant's argument relies, in effect, on the court's *dictum* in *Perry* that the "Trial Court could find that the plan in the present case considering its age, appearance and custody was reliable and helpful in deciding the boundary dispute before him and therefore admissible." *Id.*, 141 A.2d at 884–85. *Perry*, however, involved *public* records and, therefore, is distinguishable from the case at bar. In *Perry* we held that the authenticity and truth of a *public* record, which was compiled in performance of an official duty, *id.* at 297, need not be confirmed by "'those usual and ordinary tests of truth.'" *Id.* at 296, 141 A.2d at 884 (quoting *Ferguson v. Clifford*, 37 N.H. 86, 95 (1858)).

 The apparent trustworthiness rule is of no avail to the defendant in attempting to cure its fatal omission to lay a proper foundation for admission of the medical records of Bradley Wallace allegedly prepared by Dr. Ketterer. Here, there was no proof that the out-of-court declarant—Dr. Ketterer—was unavailable to testify, or that the custodian of the records was dead, insane, or beyond the jurisdiction. *See Mason v. Railway*, 79 N.H. at 303, 109 A. at 843; *cf. Seely v. Hand*, 119 N.H. 303, 306, 402 A.2d 162, 165 (1979) (hearsay statement of a deceased person, made with personal knowledge of the matter asserted and with no motive to misrepresent, was properly admitted). Nor was there evidence introduced at trial that the records were made in performance of a legal duty by a public official. It has long been recognized that the testimony of living witnesses personally cognizant of the facts of which they speak, given under the sanction of an oath in open court, where they may be subject to cross-examination, affords the greatest security and presentment of the truth.

The defendant also maintains that the medical records are necessarily admissible because the plaintiffs' expert witness, Dr. Ettelson, kept the records in his files, and relied upon them in preparation of his diagnosis and treatment of Bradley Wallace. The trial record indicates otherwise. In his deposition, Dr. Ettelson states that past medical records of Bradley Wallace, kept by other physicians who had examined Bradley Wallace, were not "germane to my

treating him." Since the medical records in question were not "germane" to the expert's own examination of Bradley Wallace, we are unable to conclude, as the defendant does, that Dr. Ketterer's records would have been "significant" in Dr. Ettelson's consideration, during his deposition, of the hypothetical question posed by the plaintiffs' counsel. Accordingly, we need not address the question whether a medical expert's reliance on another physician's report in his diagnosis of a patient would, by itself, provide an adequate foundation for admission of the medical report. *Cf. Folger v. Corbett*, 118 N.H. 737, 738, 394 A.2d 63, 64 (1978) (hearsay medical journal article properly admitted for "the limited purpose of testing the credibility of an expert witness").

■ We hold that the proper foundation required by RSA 521:2 was never laid for admission of the pertinent medical records. Thus, the records remained inadmissible hearsay, making the decision of the trial court erroneous as a matter of law. Having so held, we need not reach the question whether the absence of an entry in a physician's recorded diagnosis of a patient is admissible evidence to prove the nonexistence of an injury. *See Williams v. Williams*, 87 N.H. at 432, 182 A. at 174.

The error committed by the trial court was prejudicial to the plaintiffs' position. This is not a case in which there was "substantial agreement" between the parties as to the subject of the hearsay evidence. *See Grogan v. York*, 93 N.H. 184, 187, 38 A.2d 295, 296–97 (1944). Indeed, the matter asserted on the basis of the hearsay medical records became a focus of the parties' dispute at trial. Further, from our review of the record, we conclude that there is no compelling proof that the hearsay evidence; namely, that Bradley Wallace did not complain of an injured left leg after the accident occurred; was merely "supportive or cumulative" of other competent evidence admitted at trial. *See Town of Weare v. Paquette*, 121 N.H. at 657, 434 A.2d at 594. In fact, the other exhibit from the Lakes Region General Hospital introduced by the defendant and admitted at trial contains no reference to *any* of Bradley Wallace's complaints of bodily injury.

■ We conclude that the plaintiffs clearly were "injured" by the admission of the incompetent evidence. *Cf. Ibey v. Ibey*, 94 N.H. 425, 428, 55 A.2d 872, 874 (1947).

■ "[A] retrial for the correction of errors should be limited to the part of the case which might have been affected [by the inadmissible hearsay evidence] . . . , if the issues as to which no error occurred" are severable. *Griffin v. Theriault*, 107 N.H. 411, 418–19,

223 A.2d 655, 660 (1966). Accordingly, based upon the record before us, we remand this case for a new trial on the issue of damages only.

*Reversed and remanded.*

All concurred.